# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Kelly*, 2012 IL App (1st) 101521

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. EARL KELLY, Defendant-Appellant. |
| District & No. | First District, Third Division<br>Docket No. 1-10-1521 |
| Filed | September 5, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The dismissal of defendant's amended postconviction petition alleging that he was denied his counsel of choice and that the trial judge lacked the constitutional authority to be a judge was reversed on the ground defendant's counsel failed to provide the reasonable assistance required of postconviction counsel and the cause was remanded for second-stage proceedings with new appointed counsel. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 92-CR-14981; the Hon. Noreen Valeria-Love, Judge, presiding. |
| Judgment | Affirmed and remanded with directions. |

Counsel on Appeal

Michael J. Pelletier and Jennifer L. Bontrager, both of State Appellate Defender's Office, of Chicago, for appellant.

Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Annette Collins, Peter Fischer, and Janet C. Mahoney, Assistant State's Attorneys, of counsel), for the People.

Panel

PRESIDING JUSTICE SALONE delivered the judgment of the court, with opinion.

Justice Steele concurred in the judgment and opinion.

Justice Murphy specially concurred in the judgment, with opinion.

## OPINION

¶ 1    Petitioner Earl Kelly appeals from the dismissal of his petition for postconviction relief without an evidentiary hearing. For the reasons set forth below, we reverse the judgment of the circuit court and remand for further second-stage proceedings pursuant to the Post-Conviction Hearing Act. 725 ILCS 5/122-1 *et seq*. (West 2010).

¶ 2                                    BACKGROUND

¶ 3    Petitioner was arrested at about 2:20 a.m. on June 11, 1992, after Chicago police heard gunshots, drove in the direction of the gunshots, and saw petitioner running across a street and into a park. The officers turned on their squad car's siren and various lights, including spotlights, and drove over the curb and into the park. As petitioner ran, the officers saw him throw a brown paper bag and then a shiny object which they believed was a handgun. Petitioner stopped running, and the officers stopped their car. One of the officers handcuffed petitioner, and the other recovered the bag and a .25-caliber handgun with two live rounds in the magazine. The bag contained a scale and 12 packets of clumped white powder in chunks, which later tested positive for cocaine. The total weight of the packets was 95.1 grams. A custodial search of petitioner at the police station revealed an additional 33 packets of a white, rock-like substance and cash.

¶ 4    On August 9, 1995, following a jury trial, petitioner was found guilty of (1) possession of a controlled substance with intent to deliver and (2) armed violence. Upon motion of the State, Judge Francis Golniewicz sentenced petitioner to a term of natural life in prison pursuant to the Habitual Criminal Act. 720 ILCS 5/33B-1 *et seq*. (West 1992). On appeal, the appellate court vacated petitioner's conviction and sentence for unlawful possession of a controlled substance with intent to deliver and affirmed the conviction and sentence for armed violence. *People v. Kelly*, No. 1-95-3835 (1997) (unpublished order under Supreme Court Rule 23). Leave to appeal to the Illinois Supreme Court was denied on February 4, 1998. *People v. Kelly*, 176 Ill. 2d 584 (1998).

¶ 5                                   Postconviction Proceedings

¶ 6        On July 30, 1998, petitioner filed a *pro se* petition for postconviction relief, arguing (1) ineffective assistance of trial counsel and (2) the Habitual Criminal Act was unconstitutional. On September 17, 1998, petitioner filed a *pro se* addendum/amendment to his petition, alleging he was denied his right to counsel of his choice when Judge Golniewicz refused to allow substitute private counsel to file his appearance on the day of trial.

¶ 7        On January 29, 1999, the circuit court appointed the public defender to represent petitioner on the petition.

¶ 8        Less than a month later, on February 11, 1999, petitioner filed a *pro se* motion for leave to file an amended or second postconviction petition, along with an amended petition. The trial court never ruled on the motion for leave to file. The petition itself advanced a number of claims, including that petitioner was denied his right to counsel of his choice.

¶ 9        More than two years later, on June 25, 2001, appointed postconviction counsel filed a three-page "Partial Supplemental Post-Conviction Petition" arguing that petitioner's natural life sentence violated the rule announced in *Apprendi v. New Jersey*, 530 U.S. 466 (2000). On June 9, 2003, the State filed a motion to dismiss this claim, citing *People v. De La Paz*, 204 Ill. 2d 426 (2003), which held that *Apprendi* did not apply retroactively to criminal cases where direct appeals were exhausted before *Apprendi* was decided. Here, the Illinois Supreme Court denied petitioner's petition for leave to appeal on February 4, 1998, long before *Apprendi* was decided on June 26, 2000.

¶ 10       In summer 2003, the public defender apparently was granted leave to withdraw from the case, and petitioner retained a private attorney to represent him.

¶ 11       In June 2007 petitioner filed a *pro se* petition for writ of *habeas corpus* alleging, *inter alia*, that he was improperly incarcerated because Judge Golniewicz, who presided over his trial, was ineligible to serve as a judge. Attached to the petition were excerpts from a November 15, 2004, decision of the Illinois Courts Commission removing Golniewicz from the bench. That decision concluded, in relevant part:

           "Respondent used deception to get elected. He was living in [suburban] Riverside, but used his parents' address [in Chicago] to run for election because he had a much greater chance of winning an election using that address. Respondent actively concealed his true permanent abode." *In re Golniewicz*, No. 02 CC 1, slip op. at 31 (Ill. Ct. Comm'n Nov. 15, 2004).

¶ 12       On September 24, 2007, more than four years after petitioner retained private counsel, petitioner filed a motion for appointment of new counsel, complaining, *inter alia*, that his private counsel had neither visited him nor "filed any motions or amended petitions on the petitioner's behalf." On the same day, petitioner filed a *pro se* motion for leave to file a second supplemental postconviction petition, along with that petition. The court did not rule on the motion for leave to file. The *pro se* petition alleged, *inter alia*, that petitioner's trial counsel was ineffective for failing to inform the circuit court that she was not prepared for trial on the date the jury was selected (August 8, 1995). Attached to the petition was an affidavit from petitioner's trial counsel, an assistant public defender, stating that private

counsel attempted to appear on petitioner's behalf but needed to request a short continuance prior to the commencement of a jury trial. Petitioner's trial counsel further stated that Judge Golniewicz would not allow the private attorney to file his appearance but, rather, insisted that petitioner proceed to trial with the Office of the Public Defender as counsel. Also attached to the petition was a document titled "Affidavit" from attorney Alexander Salerno stating he asked Judge Golniewicz for leave to file his appearance on petitioner's behalf and requested a 30-day continuance to prepare for trial. Salerno stated the judge refused to allow him to file his appearance unless he agreed to try the case that day, which he could not do. Salerno also stated that petitioner's trial counsel told him she was not ready for trial either and would be asking for a continuance. The Salerno document was not notarized.

¶ 13     On April 4, 2008, petitioner's privately retained postconviction counsel responded to petitioner's previous motion for appointment of new counsel. Private counsel acknowledged he had not visited petitioner, and had not filed any motions or amended petitions on petitioner's behalf. Counsel asserted that visits to petitioner were unnecessary, and the delay was attributable to the difficulty of the issues petitioner raised. Counsel stated he would "proceed more diligently."

¶ 14     On May 9, 2008, private counsel adopted the *habeas* pleading filed by petitioner and informed the court that petitioner wanted the *habeas* petition and the postconviction petition to proceed together. Counsel also filed an amended postconviction petition in which he adopted, and attached as a group exhibit, petitioner's previously filed *pro se* postconviction pleadings. Counsel also made several specific allegations, some of which were similar to, or drawn from, allegations previously made by petitioner. Included were the claim that petitioner was denied his right to counsel of his choice, a due process claim arising from Judge Golniewicz's removal from the bench for falsifying information about his qualifications, and a claim that Judge Golniewicz's actions were "invalid" because he was never eligible to be a judge. On August 14, 2008, the State filed an amended motion to dismiss the *pro se* and amended petitions for postconviction relief.

¶ 15     On July 10, 2009, petitioner's privately retained counsel filed a third amended postconviction petition adopting petitioner's claim that his constitutional rights were denied when the circuit court denied his motion to dismiss his indictment. On August 7, 2009, the State moved to dismiss the third amended petition.

¶ 16     On January 21, 2010, petitioner filed a motion asking that his private counsel be removed and that new counsel be appointed. Petitioner complained that his private counsel would not communicate with him and had delayed the proceedings. Petitioner stated he "no longer has confidence in [private counsel], or trust in [him], where petitioner's case has been inordinately delayed for 11½ years."

¶ 17     On March 5, 2010, petitioner's private counsel informed the court that he had a discussion with petitioner, who "is very annoyed with me because he says I didn't communicate with him and I was delayed in doing things and I was." Counsel outlined his medical issues to the court, including a six-month hospitalization in 2009 resulting from a

heart attack and Legionnaires' disease.[1] Following his discussion with private counsel, petitioner acknowledged to the court that he wanted him to continue representing him.

¶ 18    On March 17, 2010, petitioner's privately retained counsel filed a Rule 651(c) (Ill. S. Ct. R. 651(c) (eff. Dec. 1, 1984)) certificate stating he had read the trial transcripts, communicated with petitioner, and amended petitioner's postconviction petition.

¶ 19    On May 21, 2010, the case came before the circuit court on the State's motion to dismiss. At one point, petitioner's counsel asked for clarification as to whether petitioner's petition was at the first stage, the second stage, or the third stage of postconviction proceedings. The State confirmed that the case was at the second stage. The judge entertained arguments on the State's motion to dismiss. In his argument, petitioner's counsel maintained that the first-stage frivolousness standard applied at the second stage as well. The State corrected counsel's misstatement of the law, noting that the petitioner's burden at the second stage is to show a substantial violation of his rights. After hearing arguments, the court granted the State's motion to dismiss. Petitioner filed a timely notice of appeal.

¶ 20                                                     ANALYSIS

¶ 21    The Post-Conviction Hearing Act (Act) provides a statutory remedy to criminal defendants who claim that substantial violations of their constitutional rights occurred at trial. *People v. Eddmonds*, 143 Ill. 2d 501, 510 (1991). The Act is not a substitute for an appeal but, rather, is a collateral attack on a final judgment. *People v. Ruiz*, 132 Ill. 2d 1, 9 (1989). Thus, where a petitioner has previously taken an appeal from a judgment of conviction, the ensuing judgment of the reviewing court will bar, under the doctrine of *res judicata*, postconviction review of all issues actually decided by the reviewing court, and any other claims that could have been presented to the reviewing court will be deemed waived. *People v. Neal*, 142 Ill. 2d 140, 146 (1990).

¶ 22    Under the Act, postconviction proceedings may consist of as many as three stages. *People v. Pendleton*, 223 Ill. 2d 458, 471-72 (2006). At the first stage, the circuit court must independently determine, within 90 days of the petition's filing, whether it is frivolous or is patently without merit. *People v. Hodges*, 234 Ill. 2d 1, 10 (2009); 725 ILCS 5/122-2.1(a)(2) (West 2010). At this point, the Act does not contemplate any type of responsive pleading by the State. *People v. Coleman*, 183 Ill. 2d 366, 379 (1998). If the circuit court finds that the petition is not frivolous or patently without merit, or if the court does not take action on the petition within 90 days of its filing, the proceedings move to the second stage, where counsel may be appointed to an indigent defendant, and the State either answers or moves to dismiss the petition. *People v. Edwards*, 197 Ill. 2d 239, 245-46 (2001); *Coleman*, 183 Ill. 2d at 379; 725 ILCS 5/122-2.1(b), 122-4, 122-5 (West 2010). At this stage, the circuit court must determine whether the petition and any accompanying documentation make a substantial showing of a constitutional violation. If no such showing is made, the petition is dismissed. *Edwards*, 197 Ill. 2d at 246. The dismissal of a petition at the second stage, without an

---

[1]In its brief to this court, the State acknowledges private counsel "was ill and in and out of the hospital throughout much of 2008, 2009, and 2010."

evidentiary hearing, is reviewed *de novo*. *Coleman*, 183 Ill. 2d at 387-89; *Pendleton*, 223 Ill. 2d at 473. If a substantial showing of a constitutional violation is set forth at the second stage, the petition advances to the third stage, where the circuit court conducts an evidentiary hearing involving fact-finding and credibility determinations. 725 ILCS 5/122-6 (West 2006); *Edwards*, 197 Ill. 2d at 246; *Pendleton*, 223 Ill. 2d at 473.

¶ 23        Before this court, petitioner advances three arguments. First, he claims he was denied his sixth amendment right to counsel of his choice when Judge Golniewicz refused to allow attorney Alexander Salerno to appear on petitioner's behalf unless Salerno agreed to try the case that same day. Petitioner's appellate attorney failed to raise this issue on appeal, which petitioner maintains was ineffective assistance of appellate counsel. Petitioner points to *United States v. Gonzalez-Lopez*, 548 U.S. 140, 150 (2006), which held that the "erroneous deprivation of the right to counsel of choice *** unquestionably qualifies as 'structural error.' " (Internal quotation marks omitted.) Petitioner argues he made a substantial showing of ineffective assistance of appellate counsel, and we should reverse the dismissal of his postconviction petition and remand for a new trial or, in the alternative, an evidentiary hearing.

¶ 24        Petitioner next argues his constitutional rights were violated because Judge Golniewicz, who presided over petitioner's trial, was elected in violation of the Illinois Constitution's residency requirement. Petitioner asserts Golniewicz falsified his application to be placed on the ballot for the tenth judicial subcircuit, claiming to live in that subcircuit when he did not. The Illinois Constitution provides, in pertinent part: "No person shall be eligible to be a Judge or Associate Judge unless he is a United States citizen, a licensed attorney-at-law of this State, and a resident of the unit which selects him." Ill. Const. 1970, art. VI, § 11. In 2004, the Illinois Courts Commission removed Golniewicz from the bench, concluding, in relevant part, that he used deception to get elected. "He was living in [suburban] Riverside, but used his parents' address [in Chicago] to run for election because he had a much greater chance of winning an election using that address." *Golniewicz*, No. 02 CC 1, slip op. at 31.

¶ 25        Petitioner contends Golniewicz was not actually a judge under the Illinois constitution, and argues he thus made a substantial showing that he was deprived of his right to a fair trial before a properly constituted tribunal. According to petitioner, we should reverse the dismissal of his postconviction petition and remand for a new trial or, at a minimum, an evidentiary hearing. Alternatively, petitioner argues he made a substantial showing that Golniewicz's lack of authority rendered petitioner's conviction and sentence void and, therefore, we should vacate the conviction and sentence and remand for a new trial.

¶ 26        Finally, petitioner argues his postconviction counsel failed to provide the reasonable level of assistance required under the Act. Petitioner notes, for example, that nearly 12 years elapsed from July 30, 1998, when he filed his *pro se* postconviction petition, until May 21, 2010, when the circuit court dismissed his amended petition. During that time, private counsel, who was retained in 2003, filed nothing on petitioner's behalf until 2008. Even then, according to petitioner, the amended petition counsel filed did not properly shape and support petitioner's claims for presentation to the court. Petitioner argues we should reverse the dismissal of his postconviction petition and remand for further second stage proceedings with competent counsel.

-6-

¶ 27    Our first task in considering these claims is to determine the proper order in which to address them. The first two claims–pertaining to Judge Golniewicz and to petitioner's right to counsel of his choice–are constitutional, while the third, involving the assistance provided by postconviction counsel, is not. It is well settled that a court should not consider a constitutional question if the case can be decided on other grounds. *People v. Brown*, 225 Ill. 2d 188, 200 (2007). "If a court can resolve a case on nonconstitutional grounds, it should do so." *Id*. (citing *People v. Lee*, 214 Ill. 2d 476, 482 (2005)). "Constitutional issues should be reached only as a last resort." *Brown*, 225 Ill. 2d at 200 (citing *In re E.H.*, 224 Ill. 2d 172, 178 (2006)). With these principles in mind, we turn first to petitioner's claim that postconviction counsel failed to provide reasonable assistance.

¶ 28    There is no constitutional right to counsel in postconviction proceedings. *People v. Moore*, 189 Ill. 2d 521, 541 (2000). Because the right to counsel in such proceedings is wholly statutory (see 725 ILCS 5/122-4 (West 2010)), petitioners are entitled only to the level of assistance provided by the Act, which has been determined to be a " 'reasonable level of assistance.' " *People v. Turner*, 187 Ill. 2d 406, 410 (1999) (quoting *People v. Owens*, 139 Ill. 2d 351, 364 (1990)). To that end, Illinois Supreme Court Rule 651(c) (eff. Dec. 1, 1984) requires that the record in postconviction proceedings demonstrate that counsel "has consulted with petitioner either by mail or in person to ascertain his contentions of deprivation of constitutional rights, has examined the record of the proceedings at the trial, and has made any amendments to the petitions filed *pro se* that are necessary for an adequate presentation of petitioner's contentions." Rule 651(c) also provides for postconviction counsel to file a certificate verifying that counsel has complied with these requirements. *Moore*, 189 Ill. 2d at 541.

¶ 29    In arguing that his postconviction counsel failed to provide reasonable assistance, petitioner points first to his appointed counsel, who filed only one document on petitioner's behalf, a "partial" supplemental petition asserting a violation of *Apprendi v. New Jersey*, 530 U.S. 466 (2000). Petitioner contends this issue had no merit, given that *Apprendi* expressly excluded prior convictions from its holding. *Id*. at 490 ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."). Moreover, the State's subsequent motion to dismiss the *Apprendi* claim cited *People v. De La Paz*, 204 Ill. 2d 426 (2003), which held that *Apprendi* did not apply retroactively to criminal cases where direct appeals were exhausted before *Apprendi* was decided. Here, the Illinois Supreme Court denied petitioner's petition for leave to appeal on February 4, 1998, long before *Apprendi* was decided on June 26, 2000.

¶ 30    Petitioner also challenges the assistance provided by his privately retained postconviction counsel. In 2008, counsel filed an amended postconviction petition which adopted, as a group exhibit, petitioner's previously filed *pro se* postconviction pleadings. Counsel also made several specific allegations, including some which were similar to, or drawn from, allegations previously made by petitioner. Included were the claim that petitioner was denied his right to counsel of his choice, a due process claim arising from Judge Golniewicz's removal from the bench for falsifying information about his qualifications, and a claim that Judge Golniewicz's actions were "invalid" because he was never eligible to be a judge.

¶ 31    With regard to the counsel-of-choice claim, petitioner argues his private counsel failed to shape this allegation into an appropriate form for presentation to the court, as required under Rule 651(c) (see *People v. Lyons*, 46 Ill. 2d 172, 174-75 (1970)). In private counsel's amended postconviction petition, the counsel-of-choice claim, which consisted of one six-line paragraph, cited *People v. Green*, 42 Ill. 2d 555 (1969), a three-page Illinois decision reversing the defendant's conviction, where the defendant argued he was deprived of his constitutional right to counsel of his choice. However, as petitioner correctly notes, counsel failed to cite *United States v. Gonzalez-Lopez*, 548 U.S. 140 (2006), the controlling Supreme Court precedent for a counsel-of-choice violation. In addition, counsel failed to attach a notarized affidavit from Alexander Salerno, the private attorney who attempted to appear for petitioner, relying instead on the un-notarized statement petitioner obtained on his own.

¶ 32    Petitioner similarly challenges his private counsel's presentation of claims regarding Judge Golniewicz, arguing that counsel failed to shape these allegations into proper form for presentation to the court. Petitioner notes, for example, that counsel failed to attach to his amended petition the Illinois Courts Commission decision (*Golniewicz*, No. 02 CC 1) documenting Golniewicz's misconduct and removing him from the bench. Counsel quoted one paragraph from the Commission's 31-page decision, but this was essentially the same paragraph (*id*. at 9) cited by petitioner in his *pro se* petition for a writ of *habeas corpus*, filed a year earlier. This paragraph, which was taken from the "Stipulated Facts" section of the decision, consisted of citations to relevant constitutional and statutory provisions. Counsel cited no other portions of the Commission's decision.

¶ 33    Petitioner also points to counsel's comments during the May 21, 2010, hearing on the State's motion to dismiss. Petitioner argues these comments indicated counsel "either fundamentally misunderstood or lacked basic knowledge" of the Act. Early in the May 21 hearing, the following colloquy took place:

> "PETITIONER'S COUNSEL: What stage are we at? I'm trying to clarify that.
>
> THE COURT: We're at a stage where I'm going to make a ruling on the State's motion.
>
> PETITIONER'S COUNSEL: No. Are we at the first stage of the PC, the second stage or the third stage?
>
> MS. ROGALA [Assistant State's Attorney]: Judge, we're at the second stage. [At] [t]he first stage the State is not involved. [At] [t]he second stage the State can either move to dismiss or file an answer. I've moved to dismiss the pleadings that [petitioner] has filed.
>
> If you deny my motion to dismiss and grant an evidentiary hearing, then we would move to the third stage of the proceedings."

As petitioner correctly notes, a petition such as his, which had been pending for nearly 12 years, necessarily could not be at the first stage. See 725 ILCS 5/122-2.1(a), (b) (West 2010); *People v. Vasquez*, 307 Ill. App. 3d 670, 672-73 (1999) (judge's failure to rule on petition within statutory 90-day time frame required that petition be advanced to second stage). Moreover, the State could not have filed a motion to dismiss if petitioner's petition were still at the first stage. The State is not allowed to participate in first-stage postconviction

proceedings. *People v. Gaultney*, 174 Ill. 2d 410, 419-20 (1996); 725 ILCS 5/122-5 (West 2010).

¶ 34    Later in the May 21 hearing, during counsel's response to the State's argument on its motion to dismiss, counsel asserted that the frivolousness standard applicable to first-stage proceedings applied equally to petitions at the second stage. This was incorrect. As the State noted in response to counsel's assertion: "The burden at the second stage is that the petitioner must show a substantial violation of his constitutional rights. It is not whether the petition is frivolous. That only applies at the first stage." See *People v. Coleman*, 183 Ill. 2d 366, 381-82 (1998) (second-stage petitions reviewed for "substantial showing" of constitutional violation).

¶ 35    Finally, petitioner emphasizes the nearly 12 years that elapsed between the filing of his *pro se* postconviction petition on July 30, 1998, and the circuit court's dismissal of his amended petition on May 21, 2010. During that time, appointed counsel, who represented petitioner for more than four years (January 29, 1999, to summer 2003), filed one document on petitioner's behalf, a three-page "partial" supplemental petition alleging an *Apprendi* violation. Thereafter, petitioner's privately retained counsel filed nothing on his behalf until nearly five years later (May 2008).

¶ 36    Petitioner points to *People v. Lyons*, 46 Ill. 2d 172 (1970), a second-stage postconviction case where more than a year passed between the filing of the *pro se* petition and the hearing on the State's motion to dismiss. During that time, the cause was continued six times, on motion of petitioner's counsel. When the matter came on for hearing on the State's motion to dismiss, the State answered ready, but the public defender stated he was not ready to proceed. The court then heard the State's argument, to which the public defender made no reply. The motion to dismiss was allowed and the petition was dismissed. On appeal, our supreme court reversed the judgment of the circuit court and remanded for "appointment of new counsel and such further proceedings as may be appropriate." *Id*. at 175. In reaching that decision, the supreme court expressed concern that more than a year had passed from the filing of the petition to the hearing on the motion. The court added that, if counsel was unable to meet his responsibilities under Rule 651(c), "then new counsel should have been appointed so that the cause could effectively proceed to disposition." *Id*.

¶ 37    Petitioner notes that in *Lyons*, the delay was a little more than a year. Here, he argues, the delay of nearly 12 years "appears all the more egregious."

¶ 38    In response to this argument, the State asserts petitioner "furiously amended and added claims to the postconviction proceedings despite his representation by counsel, contributing greatly to the delay in the conclusion of the postconviction proceedings." According to the State, the record "demonstrates that postconviction counsels provided reasonable representation[ ] given defendant's constant interference with and filings made in the postconviction proceedings." Petitioner counters that the State does not explain how petitioner's *pro se* filings caused delay or why petitioner "should have sat idly by while counsel did nothing to advance his claims."

¶ 39    The State argues, in addition, that petitioner actually benefitted from the delay in the proceedings. According to the State, it was this delay which enabled petitioner to present an

*Apprendi* claim and a claim regarding Golniewicz as part of petitioner's original postconviction proceedings, even though neither of these claims was ripe in 1998 when petitioner filed his initial *pro se* petition. In this way, the State asserts, petitioner was able to avoid "the hurdles he would have encountered had he raised the issues in a successive petition." Petitioner's reply to this argument is succinct: "[W]hether something positive can be found in the dozen years of delay–a happy coincidence–does not change the question of whether counsel complied with their responsibilities to [petitioner]." Petitioner states: "[T]he record shows that they did not."

¶ 40 We agree with petitioner. The nearly 12-year period that elapsed from petitioner's filing of his *pro se* petition in July 1998 to the circuit court's dismissal of the amended petition in May 2010 illustrates the unreasonable representation provided by both appointed and privately retained counsel. Added to this is private counsel's failure to shape petitioner's counsel-of-choice and Golniewicz claims into appropriate legal form for presentation to the court, pursuant to Rule 651(c). Moreover, private counsel's comments at the May 2010 hearing regarding whether the petition was at the second stage of the proceedings, and what the proper standard of review was at that stage, indicate counsel either lacked basic knowledge of the Act or fundamentally misunderstood it.

¶ 41 We hold that petitioner's postconviction counsel failed to provide the reasonable level of assistance required under the Act and Rule 651(c). We reverse the circuit court's dismissal of petitioner's amended postconviction petition without an evidentiary hearing and remand for further second-stage proceedings with the appointment of new counsel. In light of this determination, we need not reach petitioner's constitutional claims pertaining to Judge Golniewicz or to petitioner's right to counsel of his choice. See *Brown*, 225 Ill. 2d at 200.

¶ 42 Though we render no judgment on petitioner's constitutional claims, we make the following observations regarding the relief petitioner sought in his Golniewicz claim, and the State's response to that request. The essence of petitioner's claim was that Golniewicz gained his seat on the bench through fraud, in violation of the Illinois Constitution, and Golniewicz therefore lacked the constitutional authority to be a judge. His position as a judge was itself invalid. Petitioner argues, *inter alia*, that his conviction and sentence therefore are void, and we should vacate them and remand for a new trial. The State cited a number of reasons for rejecting this claim, including the "drastic" nature of the relief requested. Granting this relief, the State cautioned, would open the door to "the possibility of finding void thousands of cases Golniewicz presided over for numerous years on collateral review." The State emphasized that in all those cases, the participants believed Golniewicz was a judge and trusted in the validity of his rulings. The State warned of the "chaos" that could result if all those decisions were declared void.

¶ 43 While the "chaos" the State predicts should certainly be avoided if at all possible, a question nevertheless remains: Which is more drastic, granting petitioner's requested relief, with the possibility that a number of other rulings by Golniewicz might be voided as well, or serving a sentence of natural life in prison which was imposed by a void judge?

¶ 44 Without equating this question with those faced by courts in the past when confronted with weightier matters, we nevertheless note its similarity to some of those earlier dilemmas.

An example is *Vasquez v. Hillery*, 474 U.S. 254 (1986), where the issue was whether the Court should abandon the rule requiring reversal of the conviction of any defendant indicted by a grand jury from which members of his own race were systematically excluded. *Id*. at 255. The petitioner, the warden of San Quentin State Prison, argued that discrimination in the grand jury amounted to harmless error, where the evidence against the respondent was overwhelming, and his conviction, after a fair trial, purged any taint attributable to the indictment process. The petitioner added that "requiring a State to retry a defendant, sometimes years later, imposes on it an unduly harsh penalty for a constitutional defect bearing no relation to the fundamental fairness of the trial." *Id*. at 262.

¶ 45    Against the potential for imposing such an "unduly harsh penalty," the Court answered that "intentional discrimination in the selection of grand jurors is a grave constitutional trespass, possible only under color of state authority, and wholly within the power of the State to prevent." *Id*. The Court rejected the request to abandon the rule of reversal, concluding: "The overriding imperative to eliminate this systemic flaw in the charging process, as well as the difficulty of assessing its effect on any given defendant, requires our continued adherence to a rule of mandatory reversal." *Id*. at 264. See also, *e.g.*, *Gideon v. Wainwright*, 372 U.S. 335, 344 (1963) (confirming right of indigent noncapital defendant to appointment of counsel; "any person haled into court, who is too poor to hire a lawyer, cannot be assured a fair trial unless counsel is provided for him").

¶ 46    Finally, we note that a possible answer to the State's articulated "chaos" problem might lie in increased efforts at deterring the kind of misconduct Golniewicz engaged in, which efforts could result in fewer potentialities for such chaos. While the Illinois Courts Commission removed him from the bench in 2004, there is, according to the State, no public record of discipline or any proceedings instituted by the Illinois Attorney Registration and Disciplinary Commission against Golniewicz, and he remains active and authorized to practice law in Illinois. In our view, if Golniewicz's misconduct was such that it posed a threat of possible "chaos," then perhaps it warranted a more severe penalty than was imposed here.

¶ 47                                              CONCLUSION

¶ 48    We reverse the dismissal of petitioner's amended postconviction petition without an evidentiary hearing and remand to the circuit court of Cook County for further second-stage proceedings with the appointment of new counsel.

¶ 49    Affirmed and remanded with directions.

¶ 50    JUSTICE MURPHY, specially concurring.

¶ 51    I concur in the court's decision, but write separately to state that because I agree with the court that we need not address petitioner's constitutional claims, I choose not to comment on the relief petitioner has sought in his constitutional claim pertaining to Judge Golniewicz or join in the court's observations regarding such relief.