NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2025 IL App (4th) 240322-U

NO. 4-24-0322

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
March 25, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Peoria County |
| CHRISTOPHER L. ARMSTRONG, | ) | No. 09CF1334 |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | Honorable |
| | ) | Katherine S. Gorman, |
| | ) | Judge Presiding. |

PRESIDING JUSTICE HARRIS delivered the judgment of the court.
Justices Zenoff and Vancil concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The appellate court affirmed, holding that (1) defendant has not established the dismissal of his postconviction petition was in error on the basis that his former appointed attorneys provided unreasonable assistance due to delays they caused and (2) the record does not show that the trial court failed to exercise its discretion when ruling on defendant's motions to appoint private counsel.

¶ 2    Defendant, Christopher L. Armstrong, appeals the dismissal of his postconviction petition at the second stage of postconviction proceedings. Defendant argues that he was deprived of his statutory right to reasonable assistance of counsel at the second stage of proceedings where the Peoria County Public Defender's Office, which was appointed to represent him, "passed his case from attorney to attorney with little progress for eight years" and the trial court denied his requests to appoint private counsel, "forcing [him] to finally choose to proceed *pro se* in order to have his petition heard." Defendant also argues the court erred when it

denied his motions to appoint private counsel based on the premise that it lacked the discretion to appoint counsel other than the public defender's office. We affirm.

¶ 3                                 I. BACKGROUND

¶ 4        In 2011, a jury found defendant guilty of first degree murder (720 ILCS 5/9-1(a)(3) (West 2008)), and the trial court sentenced him to 65 years' imprisonment. On direct appeal, defendant argued the State failed to prove him guilty beyond a reasonable doubt, and the Third District Appellate Court affirmed his conviction. *People v. Armstrong*, 2013 IL App (3d) 110388.

¶ 5        On May 1, 2014, defendant, *pro se*, filed a postconviction petition. On June 11, 2014, the trial court entered an order advancing the petition to the second stage of postconviction proceedings and appointing the Peoria County Public Defender's Office to represent defendant. Assistant Public Defender Sam Snyder was assigned to defendant's case.

¶ 6        On August 12, 2014, defendant, *pro se*, filed a motion for the appointment of private counsel. Defendant alleged his postconviction petition contained claims that his trial attorney, Hugh Toner of the Peoria County Public Defender's Office, provided ineffective assistance of counsel. Defendant alleged it was impermissible for any attorney from that office to represent him on these claims of ineffective assistance.

¶ 7        On November 7, 2014, the trial court addressed defendant's motion for the appointment of private counsel at a hearing. Snyder was not present at the hearing, and Assistant Public Defender J. Thomas Sheets instead appeared. The court advised defendant that the right to counsel in postconviction proceedings was statutory rather than constitutional. The court stated:

> "[Y]ou can hire [a] private attorney, you can have the Public Defender's Office
> appointed to assist you on the post-conviction matter, or you can elect to represent

yourself. But I don't have the authority—well, I don't have the ability to appoint a private counsel for you because we don't have a panel of private attorneys that are willing to take on these kind of cases. The county has hired the Public Defender's Office to assist folks on post-conviction matters when they can't afford it, but there aren't private attorneys that I can just pick out of the phone book or off of a list of eligible attorneys to handle somebody's case."

Defendant replied that his argument was based on a situation where a judge "appointed a lawyer off the *pro bono* list." The court stated that, in Peoria County, there was no *pro bono* list of attorneys qualified to handle postconviction proceedings. The court stated: "I really don't have any other practical options. I don't have a list of *pro bono* attorneys to appoint for you."

¶ 8 Defendant advised the trial court that he was making an ineffective assistance of counsel claim against Toner and that Snyder was also involved with his trial as "a standby." The court informed defendant that one attorney at the public defender's office having a conflict did not automatically disqualify other attorneys from that office from representing him. The court agreed, however, that if Snyder worked on defendant's case with Toner, he should not represent him in the postconviction proceeding. The court continued the matter, directing Sheets to confer with Snyder to determine if Snyder had been involved in defendant's trial. The court stated that if Snyder had been involved in defendant's trial, it would ask that defendant's postconviction case be reassigned to a different attorney from the public defender's office.

¶ 9 On December 12, 2014, Snyder advised the trial court at a hearing that he had no independent recollection as to whether he was involved in defendant's trial representation. Snyder stated that he believed it was best that he withdraw from representing defendant due to his uncertainty. Snyder stated Sheets had agreed to take over defendant's representation.

¶ 10        On April 6, 2015, defendant, *pro se*, filed a motion titled "Motion to Proceed

*Pro Se* Conflict of Interest," in which defendant requested to represent himself on the basis that

the entire Peoria County Public Defender's Office suffered from a conflict of interest. On May

29, 2015, following a hearing on this motion during which the court found that Sheets did not

have a conflict of interest, defendant stated he wished to proceed with Sheets representing him.

Sheets advised the court that he had reviewed defendant's *pro se* postconviction petition, had

discussed it with defendant briefly, and was in the process of setting up a phone call with

defendant.

¶ 11        Defendant was represented by Sheets from December 2014 until approximately

January 2016. During this period, the trial court continued the matter at Sheets's request eight

times. Based on Sheets's representations to the court at status hearings, he missed an initial call

he set up with defendant and did not have a phone call with defendant until some point after May

29, 2015. At status hearings in August 2015 and October 2015, Sheets stated he believed he

would be able to file his Illinois Supreme Court Rule 651(c) (eff. Feb. 6, 2013) certificate and

any amendments to the petition by the next court date. However, Sheets did not appear on

defendant's behalf again after the October 2015 status hearing.

¶ 12        Snyder was again briefly appointed to defendant's case between January 2016 and

April 2016. The matter was reassigned after Snyder realized he had previously withdrawn from

the case due to a conflict alleged by defendant.

¶ 13        On June 23, 2016, and June 30, 2016, defendant, *pro se*, filed two motions to

appoint private counsel. In the motions, defendant alleged that after the court denied his previous

motion to appoint private counsel, he learned that there are *pro bono* criminal defense attorneys

in Peoria County, including several that he named in the motions. On September 9, 2016, the

trial court entered a written order denying defendant's motions. The court noted that a similar motion had previously been denied and that defendant had not alleged a conflict of interest or any other reason the public defender's office could not represent him.

¶ 14    Assistant Public Defender Jason Ramos was appointed to represent defendant beginning in August 2016. On February 21, 2017, defendant, *pro se*, filed a motion to represent himself, in which he alleged he had a conflict of interest with the Peoria County Public Defender's Office. The trial court addressed defendant's motion approximately one year later, on February 23, 2018. At that time, defendant advised the court that he was withdrawing his request to proceed *pro se* and wished to proceed with Ramos representing him.

¶ 15    The trial court continued the matter at Ramos's request 18 times between August 2016 and December 2019. During this period, Ramos advised the court that he had been meeting with defendant and attempting to contact potential witnesses at phone numbers and addresses that defendant had given him. He indicated that some of the information he received from defendant about the witnesses' contact information was inaccurate and, on one occasion, a potential witness failed to attend a scheduled meeting. In late 2018, Ramos indicated defendant had asked him to contact his aunt and uncle, who defendant claimed would put Ramos in touch with witnesses to support the petition.

¶ 16    The matter was set for a status hearing on March 21, 2020, but it was continued twice due to the COVID-19 pandemic. Assistant Public Defender Adam Bowton began representing defendant in July 2020, as Ramos had been hired as an assistant state's attorney. Between August 2020 and June 2022, the trial court continued the matter eight times at Bowton's request. During this period, Bowton indicated he was contacting potential witnesses. At some point after June 3, 2022, Assistant Public Defender Michael Vespa began representing

defendant.

¶ 17        On July 12, 2021, defendant, *pro se*, filed a motion for the appointment of private counsel. In his motion, defendant stated his postconviction petition raised claims of ineffective assistance of counsel against Toner. He also alleged that "a number of witnesses" provided Sheets with affidavits, but Sheets went "missing-in-action," along with defendant's paperwork. Defendant indicated he had been unable to contact Sheets or recover his paperwork. No ruling on this motion appears in the record.

¶ 18        On January 31, 2022, defendant, *pro se*, filed a "Motion to Relieve Appointed Counsel Adam Bowton of Record and Allow Petitioner to Proceed *Pro Se*." Defendant alleged he did not wish to be represented by the Peoria County Public Defender's Office and believed he would be better off representing himself.

¶ 19        On June 21, 2022, defendant, *pro se* filed a second motion, titled "Motion to Relieve Appointed Counsel Adam Bowton of Record and Allow Petitioner *** to Proceed *Pro Se*." At the end of the motion, defendant noted that he recently learned Vespa had been appointed to represent him, and he requested that Vespa also be relieved as his attorney. In the motion, defendant alleged he had been represented by several different attorneys from the Peoria County Public Defender's Office since he filed his *pro se* petition in 2014. Defendant alleged that his first attorney, Snyder, tried to convince him that none of his claims were meritorious and also that Snyder participated in his trial. He alleged his second attorney, Sheets, "disappeared with a number of [his] affidavits." He alleged his third attorney, Ramos, left the public defender's office to become an assistant state's attorney and had stopped putting any time or effort into his case in the approximately six months before he left.

¶ 20        Defendant alleged his fourth attorney, Bowton, had only scheduled one phone call

with him since being appointed in March 2020. Defendant alleged that Bowton had failed to communicate with him, keep meetings with potential witnesses, or "put forth any effort in regards to obtaining relevant information or affidavits to assist [defendant] in shaping [his] petition or claims." Defendant stated that because he alleged in his petition that he received ineffective assistance of counsel from Toner, no attorney from the public defender's office could preserve "the integrity of [his] ineffective assistance of counsel claims." Defendant requested that he be permitted to represent himself or, alternatively, that private counsel be appointed.

¶ 21    On December 9, 2022, defendant appeared at a status hearing with Assistant Public Defender Vespa. Vespa advised the trial court that defendant was requesting to represent himself. The court stated, "Well, [defendant], that's certainly your prerogative." After asking the State where the case was at procedurally, the court stated: "So I will allow Mr. Vespa to withdraw and I'll let you proceed as a self-represented litigant." The court then permitted defendant to supplement his postconviction petition with additional allegations.

¶ 22    On June 5, 2023, the State filed a motion to dismiss defendant's postconviction petition, which it subsequently amended and supplemented in July and November 2023, respectively. On January 11, 2024, the trial court entered an order dismissing defendant's postconviction petition in its entirety. This appeal followed.

¶ 23                                    II. ANALYSIS

¶ 24                    A. Unreasonable Assistance of Postconviction Counsel

¶ 25    On appeal, defendant argues he was not afforded his statutory right to the reasonable assistance of postconviction counsel where the Peoria County Public Defender's Office passed his case from attorney to attorney with little progress for eight years and the trial court denied his requests for the appointment of counsel other than the public defender.

Defendant contends this finally forced him to proceed *pro se* in order to have his petition heard. Defendant argues that his decision to represent himself was not a "voluntary decision" but rather "reflect[ed] a denial of the right to reasonable assistance of counsel." Defendant notes that, in the eight years he was represented by attorneys from the Peoria County Public Defender's Office, none of his appointed attorneys made necessary amendments to his petition, as required by Illinois Supreme Court Rule 651(c) (eff. July 1, 2017).

¶ 26 The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2022)) provides a mechanism by which persons imprisoned in the penitentiary may assert claims that, in the proceedings resulting in their conviction, there was a substantial denial of their constitutional rights. There are three stages to postconviction proceedings. *People v. Addison*, 2023 IL 127119, ¶ 18. At the first stage, the trial court must independently review the petition within 90 days of its filing and determine if it is frivolous or patently without merit. 725 ILCS 5/122-2.1(a)(2) (West 2022). If the petition survives first stage review, it advances to the second stage where the trial court may appoint counsel to assist an indigent defendant. *Id.* § 122-4; see *Addison*, 2023 IL 127119, ¶ 18. At the second stage, the State may file a motion to dismiss or an answer to the petition. *People v. Urzua*, 2023 IL 127789, ¶ 34. In deciding a motion to dismiss, the trial court must determine whether the petition and any supporting documentation make a substantial showing of a constitutional violation. *Id.* If the petition makes the requisite substantial showing, it is advanced to a third-stage evidentiary hearing. *Id.*

¶ 27 "It is well established there is no constitutional right to counsel in proceedings under the Act." *Id.* ¶ 51. Rather, the right to counsel in postconviction proceedings is entirely statutory. *Id.* A postconviction petitioner is entitled only to the level of assistance granted by the Act, which is a "reasonable level of assistance." (Internal quotation marks omitted.) *Addison*,

2023 IL 127119, ¶ 19. The reasonable level of assistance afforded in postconviction proceedings is less than that afforded by the federal and Illinois constitutions. *Id.*

¶ 28     "To ensure that postconviction petitioners receive this level of assistance, Rule 651(c) imposes specific duties on postconviction counsel." *People v. Suarez*, 224 Ill. 2d 37, 42 (2007). Specifically, Rule 651(c) provides:

> "The record *** shall contain a showing, which may be made by the certificate of petitioner's attorney, that the attorney has consulted with petitioner by phone, mail, electronic means or in person to ascertain his or her contentions of deprivation of constitutional rights, has examined the record of the proceedings at the trial, and has made any amendments to the petitions filed *pro se* that are necessary for an adequate presentation of petitioner's contentions." Ill. S. Ct. R. 651(c) (eff. July 1, 2017).

Compliance with Rule 651(c) is mandatory (*Addison*, 2023 IL 127119, ¶ 21) and must be shown regardless of whether the claims in the *pro se* petition are viable. *Suarez*, 224 Ill. 2d at 52.

¶ 29     We review *de novo* defendant's claim that his postconviction attorneys provided an unreasonable level of assistance. *People v. Madison*, 2023 IL App (1st) 221360, ¶ 35; see *Addison*, 2023 IL 127119, ¶ 17 ("We review a trial court's dismissal of a postconviction petition at the second stage *de novo*.").

¶ 30     Here, while none of defendant's appointed attorneys filed an amended postconviction petition, we cannot say that this omission demonstrates a lack of compliance with Rule 651(c) or unreasonable assistance in light of the fact that appointed counsel was discharged at defendant's request while counsel was still working to complete the tasks required by Rule 651(c). As defendant notes, his case was assigned to several different assistant public defenders

over the eight-year period during which he was represented by counsel. During this time, his attorneys advised the trial court that they were conferring with defendant and contacting witnesses in order to obtain supporting affidavits for the petition. It appears from the record that defendant's appointed attorneys were working toward fulfilling their duties under Rule 651(c), albeit very slowly, throughout their representation of defendant.

¶ 31    While we certainly cannot condone the eight-year delay in this case, defendant has cited no authority for the proposition that lengthy delays caused by appointed counsel during the course of postconviction proceedings, without more, amount to unreasonable assistance. Defendant cites *People v. Lyons*, 46 Ill. 2d 172 (1970), and *People v. Kelly*, 2012 IL App (1st) 101521, for the proposition that courts have found delay to be a reason for finding unreasonable assistance of counsel in postconviction proceedings. However, in *Kelly*, a 12-year delay between the filing of the *pro se* postconviction petition and the dismissal of the petition was only one of the bases upon which the court found counsel had provided unreasonable assistance. *Kelly*, 2012 IL App (1st) 101521, ¶¶ 40-41. The court was also critical of counsel for having filed an amended petition that failed to shape one of the defendant's claims into appropriate legal form and of counsel's comments to the trial court indicating a lack of understanding of the Act. *Id.* ¶ 40. Significantly, unlike in the instant case, where defendant elected to proceed *pro se* before counsel had completed the duties set forth in Rule 651(c), the *Kelly* defendant's counsel filed an amended petition and was still representing him when his petition was dismissed. See *id.* ¶ 19.

¶ 32    In *Lyons*, the supreme court reversed the dismissal of the defendant's postconviction petition and remanded the matter for further proceedings where the record did not contain a showing that the defendant's appointed attorney had reviewed the record, consulted with the defendant to ascertain his claims, or made any amendments to the petition necessary to

properly present the defendant's claims. *Lyons*, 46 Ill. 2d at 174-75. On the contrary, counsel had advised the trial court that he was not prepared to proceed on the State's motion to dismiss the postconviction petition, and the court held a hearing on the motion anyway. *Id.* at 173. The *Lyons* court noted that over a year had passed between the filing of the postconviction petition and the hearing on the State's motion to dismiss, during which time the matter was continued six times on postconviction counsel's motion. *Id.* at 174. The *Lyons* court stated:

> "Having been continually advised by petitioner's counsel that he was not prepared on the petition, it would be the responsibility of the hearing court to inquire of him as to the cause for the delay in preparation and reflect the causes therefor in the record. If counsel had failed in meeting his responsibilities ***, then new counsel should have been appointed so that the cause could effectively proceed to disposition. If counsel had communicated with petitioner and reviewed the record of proceedings resulting in conviction but was unable to prepare a proper or amended petition, the court might then be justified in dismissing the petition. In either event, however, we could be assured that petitioner's rights had been preserved." *Id.* at 175.

Thus, while the *Lyons* court expressed concern at the delay, the reason for the reversal and remand in that case was not the delay itself but rather the fact that the trial record did not show that postconviction counsel had performed his duties of reviewing the record, consulting with the defendant, and making any necessary amendments to the petition. Like in *Kelly* and unlike in the instant case, the defendant in *Lyons* was represented by counsel at the time the petition was dismissed. See *id.* at 173.

¶ 33     We understand defendant's frustration with the delays in the proceedings

occasioned by his appointed counsel and allowed by the trial court and the general lack of progress in his case over an eight-year span. We agree with defendant's assertion in his brief that "[t]his is not how post-conviction proceedings should operate." However, defendant has cited no authority standing for the proposition that a postconviction petitioner proceeding *pro se* may obtain reversal of the dismissal of his petition on the basis that his former counsel provided unreasonable assistance by failing to complete his or her duties in a timely manner. While the Act provides for the appointment of counsel at the second stage of proceedings (see 725 ILCS 5/122-4 (West 2022)) and Rule 651(c) sets forth the duties postconviction counsel must perform at the second stage, neither the Act nor Rule 651(c) sets forth any time limitations for completing these duties.

¶ 34       Finally, as part of his argument he received unreasonable assistance, defendant asserts in several places in his brief that his waiver of postconviction counsel was not "valid" or a "voluntary choice" because his petition "had lingered for over eight years at the second stage with no progress made." Defendant notes that the trial court failed to ask "a single question *** to ensure [his waiver] was voluntary and what [he] wanted to do." However, defendant has framed his argument on appeal as a claim that he received unreasonable assistance from postconviction counsel. Defendant has not clearly asserted a separate claim that his waiver of counsel was invalid, and, accordingly, we do not address the issue. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020); *Cwik v. Giannoulias*, 237 Ill. 2d 409, 423 (2010) ("An issue not clearly defined and sufficiently presented fails to satisfy the requirements of Supreme Court Rule 341(h)(7).").

¶ 35       B. Denial of Defendant's Motions to Appoint Private Counsel

¶ 36       Defendant further argues that the trial court erred by denying his motions for the

appointment of private counsel on the basis that it lacked the discretion to appoint counsel other than the public defender's office. "Under the [Act], there is no absolute right to appointment of non-public-defender counsel, and *** such appointment is within the discretion of the trial court." (Internal quotation marks omitted.) *People v. Partee*, 268 Ill. App. 3d 857, 868 (1994). "A petitioner is entitled to appointment of an attorney other than the public defender only upon a showing of good cause *** and, in the absence of a showing of good cause, it is within the trial court's discretion to deny such a request." (Internal quotation marks omitted.) *Id.*

¶ 37 While recognizing that the appointment of private counsel is generally a matter within the discretion of the trial court, defendant argues that the *de novo* standard of review should be applied to his argument rather than the abuse of discretion standard because the trial court in this case failed to exercise its discretion in the first place. We decline defendant's invitation to deviate from the abuse of discretion standard of review. We note that "[w]here a court erroneously believes that it has no discretion in a matter, its failure to exercise discretion can itself constitute an abuse of discretion." *People v. Bernard*, 2021 IL App (2d) 181055, ¶ 25. However, not every such error is "of such magnitude that relief is warranted." *Id.*; see *People v. Chapman*, 194 Ill. 2d 186, 224-25 (2000). Rather, the trial court's failure to exercise its discretion must be assessed in the context of the entire proceeding. *Chapman*, 194 Ill. 2d at 224; see *Bernard*, 2021 IL App (2d) 181055, ¶ 25; *People v. Phelps*, 2024 IL App (4th) 230701-U, ¶ 32.

¶ 38 Defendant acknowledges that that he filed "multiple motions" in the trial court requesting private counsel. However, defendant discusses only two of these motions in his initial brief: (1) his motion for the appointment of private counsel filed on August 12, 2014, and (2) his "Motion to Relieve Appointed Counsel Adam Bowton of Record and Allow Petitioner *** to

Proceed *Pro Se*" filed on June 21, 2022. We address each motion in turn.

¶ 39                               1. *August 2014 Motion*

¶ 40          Defendant argues that, when the trial court denied his August 12, 2014, motion for the appointment of private counsel, it erroneously stated it lacked the ability or the authority to appoint private counsel. Defendant asserts this comment shows the court failed to exercise any discretion when ruling on this motion.

¶ 41          We disagree that the trial court's comments demonstrate a belief that it lacked the discretion to appoint private counsel. While the court initially stated it lacked the "authority" to appoint counsel other than the public defender, it quickly corrected itself, stating it was unable to appoint private counsel because it did not "have a panel of private attorneys that are willing to take on these kind of cases." The court further explained that it did not have any other "practical options" for the appointment of counsel other than the public defender's office because it did not have a list of *pro bono* attorneys with the ability to handle postconviction cases. These comments do not indicate that the court believed it lacked the discretion to appoint private counsel but rather that it was unaware of any local private attorneys whom it could appoint to represent defendant. Thus, we find that the court's statements do not reflect a failure to exercise discretion.

¶ 42                               2. *June 2022 Motion*

¶ 43          Defendant also argues the trial court "refused to consider the merits" of his "Motion to Relieve Appointed Counsel Adam Bowton of Record and Allow Petitioner *** to Proceed *Pro Se*" filed on June 21, 2022. Defendant contends the court failed to "investigate or question in court the various allegations made" in this motion and allowed defendant to proceed *pro se* without asking any questions. Defendant argues: "This was not an exercise of discretion, there was no weighing of the facts or the merits, the court simply told Mr. Vespa he could

withdraw and allowed [defendant] to proceed *pro se*." Defendant argues the court "simply did not even entertain exercising its discretion to appoint counsel other than the public defender."

¶ 44　　　　Significantly, defendant framed his June 21, 2022, motion as a motion to proceed *pro se* rather than a motion to appoint private counsel. He did not reference the appointment of private counsel in the title of the motion, and most of the motion was devoted to his argument that he should be permitted to represent himself. While defendant requested the appointment of private counsel as alternative relief, the primary relief he requested throughout the motion was to represent himself. It would have been preferable for the trial court to have questioned defendant concerning the allegations in his petition and his desire to represent himself. However, the fact that the court granted the primary relief defendant requested in his motion without addressing the alternative relief requested does not affirmatively show that the court failed to exercise discretion as to defendant's request for private counsel. See *In re N.B.*, 191 Ill. 2d 338, 345 (2000) ("The circuit court is presumed to know the law and apply it properly, absent an affirmative showing to the contrary in the record.").

¶ 45　　　　We note that in his reply brief, defendant claims his argument is based not only upon the June 2022 motion but also upon his "Motion for Appointment of Private Counsel" filed on July 12, 2021, which he noted the trial court never ruled on. However, defendant failed to mention the July 2021 motion at any point in his initial brief, and, accordingly, has forfeited the portion of his argument relating to this motion. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) ("Points not argued are forfeited and shall not be raised in the reply brief, in oral argument, or on petition for rehearing.").

¶ 46　　　　In reaching our holding, we reject defendant's reliance on *Partee* in support of his argument that the trial court in this case failed to exercise any discretion with regard to the June

2022 motion. In *Partee*, the trial court repeatedly told the defendant that it had no authority to appoint counsel other than the public defender to represent him, even after the public defender had been permitted to withdraw due to a conflict of interest. *Partee*, 268 Ill. App. 3d at 862. The *Partee* court found that, while denying the defendant's motions for private counsel was a matter within the trial court's discretion, the trial court failed to exercise any discretion, erroneously believing it "lacked any option in the matter." *Id.* at 868-69. The court then stated: "[W]here a circuit court erroneously believes that it has no discretion in a matter, its ruling on a matter requiring the exercise of discretion must be reversed on appeal where it palpably fails to exercise that discretion." *Id.* at 869.

¶ 47        Here, when ruling on defendant's June 12, 2022, "Motion to Relieve Appointed Counsel Adam Bowton of Record and Allow Petitioner *** to Proceed *Pro Se*," the trial court did not indicate it believed it lacked authority to appoint private counsel. Rather, it did not reach the question of whether private counsel should be appointed (which was the alternative relief defendant requested in his motion) and instead granted defendant the primary relief requested in the motion (to proceed *pro se*).

¶ 48        We also find questionable defendant's reliance on *Partee* for the proposition that reversal is automatically required when the trial court fails to exercise its discretion given our supreme court's subsequent decision in *Chapman*. In *Chapman*, the court rejected the defendant's argument that a trial court's failure to exercise its discretion in determining whether to give a *Prim* instruction (see *People v. Prim*, 53 Ill. 2d 62 (1972)), without more, required automatic reversal. *Chapman*, 194 Ill. 2d at 223-24. The *Chapman* court found that the effect of the trial court's failure to exercise its discretion must be assessed in the context of the entire proceeding and that the alleged error in that case was not of such magnitude that a new trial was

- 16 -

warranted. *Id.* at 224-25. *Chapman* has been followed by other courts addressing claims that the trial court failed to exercise its discretion in various ways. See *Bernard*, 2021 IL App (2d) 181055, ¶ 25; *Phelps*, 2024 IL App (4th) 230701-U, ¶ 32; see also *People v. Gibson*, 136 Ill. 2d 362, 380 (1990) (questioning, in *dicta*, the utility of a rule of automatic reversal when a trial court fails to exercise its discretion in determining whether to appoint standby counsel at trial).

¶ 49                            III. CONCLUSION

¶ 50          For the reasons stated, we affirm the trial court's judgment.

¶ 51          Affirmed.