2022 IL App (2d) 210154
No. 2-21-0154
Opinion filed October 18, 2022

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Winnebago County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 97-CF-1395 |
| JOHNNY RAMONE BLAKE, a/k/a Johnie Blake, | ) ) ) | |
| | ) ) | Honorable Randy Wilt, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE SCHOSTOK delivered the judgment of the court, with opinion.
Justices McLaren and Birkett concurred in the judgment and opinion.

**OPINION**

¶ 1 Defendant, Johnny Ramone Blake, a/k/a Johnie Blake, appeals from an order of the circuit court of Winnebago County granting the State's motion to dismiss his amended petition under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2020)) for relief from his sentence for first-degree murder (720 ILCS 5/9-1(a)(3) (West 1996)). Defendant contends that he did not receive reasonable assistance from postconviction counsel, because—more than 16 years after defendant filed his *pro se* postconviction petition—counsel submitted an amended petition that disregarded all of defendant's *pro se* claims and instead raised a new, meritless claim. We affirm.

¶ 2                                     I. BACKGROUND

¶ 3      Defendant's first-degree murder conviction stemmed from the fatal shooting of 10-year-old T.H. on May 31, 1997. T.H. was hit by a stray bullet while sitting on a couch in her home in Rockford. Defendant was found guilty following a jury trial at which the State's witnesses included Terrance Ruffin and Tausha Barr. Ruffin testified that he and defendant learned that a party was taking place at a home on State Street in Rockford. In the past, Ruffin "got into it" with the residents of that home. Defendant suggested that they " 'air them out,' " *i.e.*, shoot at them. Defendant and Ruffin went to the house, armed with handguns. Ruffin had a .22-caliber weapon, and defendant had a .38- or .357-caliber weapon. When they arrived at the house, there were about 12 people on the porch. Defendant and Ruffin positioned themselves at different locations near the house. After hearing gunfire, Ruffin fired toward the house. A bullet entered T.H.'s home and struck her in the head.

¶ 4      Barr testified that, when she visited defendant in jail following his arrest, he told her where to find a gun and to dispose of it. Barr and a friend took the gun to the Rock River and threw it toward the river. Barr's friend later led police to the gun. Forensic testing determined that the gun fired the bullet that killed T.H.

¶ 5      Because T.H. was under 12 years old, defendant was eligible for a discretionary extended-term sentence. 730 ILCS 5/5-5-3.2(b)(4)(i), 5-8-2(a)(1) (West 1996). Accordingly, the trial court imposed an extended-term sentence of 80 years' imprisonment with day-for-day good conduct credit. Defendant appealed.

¶ 6      In April 2001, we affirmed defendant's conviction and sentence. *People v. Blake*, No. 2-99-0383 (2001) (unpublished order under Illinois Supreme Court Rule 23). Defendant filed a petition for leave to appeal to the Illinois Supreme Court, which the court denied in April 2003.

On March 4, 2002, prior to the denial of the petition for leave to appeal, defendant filed his *pro se* postconviction petition, in which he claimed that (1) he was arrested without probable cause, (2) the trial court erred in failing to quash his arrest and suppress his statements to police, (3) the prosecution improperly impeached Ruffin and withheld statements, (4) the trial court improperly allowed the State to ask leading questions of numerous witnesses, (5) the trial court improperly allowed the victim's family "to put forth obvious displays of emotion" during opening statements and trial testimony, (6) the trial court arbitrarily limited defendant's questioning of prospective jurors during *voir dire* and improperly allowed the prosecution to "indoctrinate" the jurors, (7) trial counsel labored under a conflict of interest, (8) the trial court erred in qualifying the State's expert witness in ballistics, (9) defendant did not receive the effective assistance of counsel at trial, and (10) defendant did not receive the effective assistance of counsel on appeal. The trial court dismissed the petition because defendant's direct appeal was unresolved. Defendant appealed, and we reversed in May 2003. *People v. Blake*, No. 2-02-0696 (2003) (unpublished summary order under Illinois Supreme Court Rule 23(c)(2)).

¶ 7    On remand, on June 26, 2003, the trial court appointed the public defender to represent defendant in the postconviction proceedings. On August 28, 2003, the public defender withdrew, and conflict counsel David Brown was appointed. For nearly five years, Brown sought repeated continuances to prepare an amended petition but never filed one. On July 31, 2008, attorney Michael Phillips appeared for defendant. Phillips likewise sought repeated continuances to file an amended petition but never did so. In March 2014, Phillips advised the court that defendant desired a different attorney. Defendant retained an attorney who promptly withdrew because of a conflict of interest. In May 2014, the court appointed attorney Patrick Braun. In February 2016, Braun withdrew due to a conflict of interest, and the court appointed attorney David Carter.

¶ 8    On January 31, 2020, nearly four years after his appointment, Carter filed an amended petition raising a single claim: that defendant's 80-year extended term sentence was tantamount to a life sentence and, thus, violated the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11). According to the amended petition, defendant was 18 years old at the time of the offense, and the trial court failed to consider defendant's age and prospects for rehabilitation when imposing the sentence. The amended petition mischaracterized the extended-term sentence as mandatory, arguing that it "impermissibly limit[ed] the court's ability to consider other factors in mitigation when imposing a sentence on an 18-year-old defendant and fail [*sic*] to satisfy constitutional constrictions [*sic*]." The petition asserted that the 80-year sentence was "unconstitutional under the facts and circumstances of th[e] case in that it fail[ed] to allow for the restoration of the Defendant to useful citizenship or any form of rehabilitation." The amended petition further argued, in essence, that the failure to raise the issue on direct appeal should not result in forfeiture, because "cases such as *Miller v. Alabama* [567 U.S. 460 (2012)]" had not yet been decided when defendant's appeal was decided.

¶ 9    The State moved to dismiss the amended petition. The State recognized that, under *Miller* and its progeny, a life sentence, whether mandatory or discretionary, natural, or *de facto*, cannot be imposed for a crime committed by a juvenile unless the trial court considers the offender's youth and its attendant consequences. See *People v. Buffer*, 2019 IL 122327, ¶ 25. However, the State argued that those requirements did not apply to defendant, because (1) he was not a juvenile when he committed the crime and, (2) with day-to-day credit, he would serve only 40 years in prison, and, under *Buffer*, a sentence of 40 years or less is not a *de facto* life sentence (*id.* ¶ 41). The State also noted that defendant's extended-term sentence was discretionary, not mandatory.

Finally, the State observed that, at sentencing, the trial court noted that defendant had accumulated a significant criminal history by age 18, which reflected poorly on his prospects for rehabilitation.

¶ 10    The trial court granted the State's motion, and this appeal followed.

¶ 11                                    II. ANALYSIS

¶ 12    As our supreme court explained in *People v. Hommerson*, 2014 IL 115638, ¶¶ 7-8:

> "The Act provides a three-stage process for adjudicating postconviction petitions. At the first stage, the [trial] court determines whether the petition is 'frivolous or is patently without merit.' [Citation.] The court makes an independent assessment as to whether the allegations in the petition, liberally construed and taken as true, set forth a constitutional claim for relief. [Citation.] The court considers the petition's 'substantive virtue' rather than its procedural compliance. [Citation.] If the court determines the petition is frivolous or patently without merit, the court dismisses the petition. [Citation.] If the petition is not dismissed, it will proceed to the second stage.
>
> At the second stage, the court may appoint counsel to represent an indigent defendant, and counsel may amend the petition if necessary. [Citation.] The State may then file a motion to dismiss the petition. [Citation.] If the State does not file a motion to dismiss or if the court denies the State's motion, the petition will proceed to the third stage and the court will conduct an evidentiary hearing on the merits of the petition. [Citation.]"

"At [the second] stage, the [trial] court must determine whether the petition and any accompanying documentation make a 'substantial showing of a constitutional violation.' " *People v. Domagala*, 2013 IL 113688, ¶ 33 (quoting *People v. Edwards*, 197 Ill. 2d 239, 246 (2001)).

¶ 13    This appeal arises from the second-stage dismissal of defendant's amended petition. Defendant does not dispute that the amended petition failed to make a substantial showing of a

constitutional violation. Rather, defendant takes issue with the quality of representation he received from counsel during the postconviction proceedings. The right to counsel in postconviction proceedings is statutory, not constitutional. *People v. Suarez*, 224 Ill. 2d 37, 42 (2007). The Act entitles a defendant to reasonable assistance from counsel in a postconviction proceeding. *Id.*

¶ 14    In enacting the Act, the General Assembly "anticipated that most petitions under the Act would be filed *pro se* by prisoners who did not have the aid of counsel in their preparation." *People v. Johnson*, 154 Ill. 2d 227, 237 (1993). "To ensure that the complaints of a prisoner might be adequately presented, the statute contemplates that the attorney appointed to represent an indigent petitioner will ascertain the basis of the petitioner's complaints, shape those complaints into appropriate legal form and present the prisoner's constitutional contentions to the court." *Id.* at 237-38. To that end, Illinois Supreme Court Rule 651(c) (eff. July 1, 2017) imposes specific duties on counsel in postconviction proceedings. Rule 651(c) provides, in pertinent part:

> "The record filed in that court shall contain a showing, which may be made by the certificate of petitioner's attorney, that the attorney has consulted with petitioner by phone, mail, electronic means or in person to ascertain his or her contentions of deprivation of constitutional rights, has examined the record of the proceedings at the trial, and has made any amendments to the petitions filed *pro se* that are necessary for an adequate presentation of petitioner's contentions." *Id.*

When counsel files a Rule 651(c) certificate, a rebuttable presumption arises that counsel provided reasonable assistance. *People v. Landa*, 2020 IL App (1st) 170851, ¶ 46.

¶ 15    Here, attorney Carter filed a Rule 651(c) certificate, but defendant argues that the record rebuts the presumption of reasonable assistance. Defendant contends that counsel "did not take

any steps for 'adequate presentation' of any of [defendant's] *pro se* issues." The argument presupposes that Carter could do so. However, that is not necessarily the case. It is well established that the duty to shape the defendant's claims into appropriate legal form "does not require postconviction counsel to advance frivolous or spurious claims on defendant's behalf." *People v. Greer*, 212 Ill. 2d 192, 205 (2004). As the *Greer* court explained, "If amendments to a *pro se* postconviction petition would only further a frivolous or patently nonmeritorious claim, they are not 'necessary' within the meaning of the rule." *Id.* Consequently, "where *** the presumption of reasonable assistance is present, 'the question of whether the *pro se* allegations had merit is crucial to determining whether counsel acted unreasonably by not filing an amended petition.' " *People v. Gallano*, 2019 IL App (1st) 160570, ¶ 30 (quoting *People v. Profit*, 2012 IL App (1st) 101307, ¶ 23). The same principle applies where, as here, counsel filed an amended petition that omitted claims brought in the *pro se* petition. Counsel's decision to file an amended petition does not require counsel to advance frivolous or spurious claims. Thus, when counsel chooses to omit *pro se* claims from an amended petition, the reasonableness of that choice depends on the merits of the *pro se* claims.

¶ 16    Defendant did not originally argue that any of the claims in the *pro se* petition were actually meritorious. Accordingly, we ordered the parties to file supplemental briefs addressing that issue. Specifically, we ordered the parties to address the issue of "which, if any, of the claims in defendant's *pro se* postconviction petition were meritorious such that, by filing an amended petition that abandoned the claim or claims, postconviction counsel failed to provide reasonable assistance." Rather than arguing that even a single one of the 10 claims in his *pro se* petition was meritorious, defendant argues in his supplemental brief that it is not possible to evaluate the merits of his *pro se* claims, because "[c]ounsel offered no explanation as to why all of the original claims

were abandoned—they may have been abandoned after well-reasoned consideration or they may have never been considered by counsel at all."

¶ 17    There are two flaws in defendant's reasoning. First, many of defendant's *pro se* claims appear to be based on trial errors and do not depend on matters outside the record on appeal. For example, defendant challenged the ruling on a motion to quash and suppress. He also claimed that the prosecution improperly impeached its own witness with previously undisclosed statements and asked leading questions. In addition, he claimed that errors occurred during jury selection. We see no reason why defendant's counsel in this appeal could not address the merits of such issues.

¶ 18    Second, defendant's suggestion that counsel might have abandoned the claims "after well-reasoned consideration," or no consideration at all, overlooks the effect of counsel's Rule 651(c) certificate. Because counsel filed a Rule 651(c) certificate, we must presume that counsel provided reasonable assistance and that the decision not to pursue the *pro se* claims was the product of reasoned decision-making.

¶ 19    Defendant seems fixated on counsel's failure to explain on the record why he abandoned the *pro se* claims. We recognize that there are occasions when postconviction counsel is required to justify a decision not to pursue a defendant's *pro se* claims. That is the case when the trial court affirmatively finds that the *pro se* petition was not frivolous or patently without merit but counsel concludes otherwise and seeks to withdraw. *People v. Kuehner*, 2015 IL 117695, ¶¶ 21, 27. Here, however, *Kuehner* does not apply. Counsel did not seek to withdraw. Moreover, although the petition proceeded to the second stage, it was not because the trial court made the requisite finding. Rather, the trial court originally dismissed the *pro se* petition because defendant's direct appeal was still pending. This court reversed and remanded "for [a] hearing on defendant's petition for postconviction relief." *Blake*, No. 2-02-0696. On remand, the trial court interpreted that directive

as an order to docket the petition for second-stage proceedings. The trial court never found that the petition was not frivolous or patently without merit.

¶ 20    Defendant further argues that, having ignored his *pro se* claims, counsel failed to provide reasonable assistance where he filed an amended petition containing a new, meritless claim. However, where counsel has filed a Rule 651(c) certificate and the defendant claims that counsel provided unreasonable assistance, "the defendant must show not only how the attorney's performance was deficient or unreasonable but also what prejudice resulted from that deficiency." *Landa*, 2020 IL App (1st) 170851, ¶ 58. Defendant is no worse off because counsel chose to pursue the meritless *Miller* claim rather than the 10 presumably meritless *pro se* claims in defendant's original petition. Accordingly, defendant suffered no prejudice.

¶ 21    Finally, defendant argues that the "extraordinary delay in filing an amended petition *** further underscores the unreasonable representation in this matter." Defendant cites several cases in which reviewing courts or individual justices have expressed concern about extreme delays in second-stage proceedings. See *People v. Lyons*, 46 Ill. 2d 172 (1970); *People v. Kelly*, 2012 IL App (1st) 101521; *People v. Bennett*, 394 Ill. App. 3d 350 (2009); *People v. Woidtke*, 313 Ill. App. 3d 399, 413 (2000) (Maag, J., specially concurring).

¶ 22    In *Lyons*, court-appointed counsel did not file an amended petition, and the State filed a motion to dismiss the *pro se* petition. Counsel requested multiple continuances, causing over a year's delay from filing the defendant's *pro se* petition to the hearing on the State's motion to dismiss. *Lyons*, 46 Ill. 2d at 173. At that hearing, counsel stated that he was unprepared to proceed. Nonetheless, the trial court proceeded with the hearing and ultimately granted the motion to dismiss. *Id.* The supreme court reversed. The court explained that—given the delay in the postconviction proceedings, the absence of an amended petition, and counsel's claimed

unpreparedness at the hearing—the trial court should have inquired into the cause of the delay and verified that counsel "had communicated with petitioner and reviewed the record of proceedings resulting in conviction but was unable to prepare a proper or amended petition." *Id.* at 175.

¶ 23    *Lyons* is distinguishable. Although the delay here was considerably longer than in *Lyons*, counsel here filed an amended petition, unlike counsel in *Lyons*. Also, counsel here filed a Rule 651(c) certificate—raising a presumption of compliance with the rule—while counsel in *Lyons* apparently did not.

¶ 24    In *Bennett*, we affirmed the denial, following a third-stage evidentiary hearing, of the defendant's postconviction petition. The defendant argued that counsel had violated Rule 651(c). We held that, because counsel drafted the petition, that rule did not apply. *Bennett*, 394 Ill. App. 3d at 354. We noted, in passing, our dissatisfaction with the fact that a timely postconviction petition seeking relief from a 1989 conviction was not being resolved until 2009. *Id.* at 355. However, we did not indicate under what circumstances, if any, such delay might be a basis for finding noncompliance with Rule 651(c).

¶ 25    In *Woidtke*, following a third-stage evidentiary hearing, the trial court denied the defendant's postconviction claim that his trial attorney labored under a conflict of interest. The *Woidtke* court reversed and awarded the defendant a new trial. Justice Maag specially concurred, pointing out that the trial court and counsel had unconscionably allowed the petition to languish for years. *Woidtke*, 313 Ill. App. 3d at 413 (Maag, J., specially concurring). However, Justice Maag did not suggest that the delay alone was grounds for any relief from the trial court's denial of the petition.

¶ 26    In contrast, in *Kelly*, the delay of 12 years from the filing of the defendant's *pro se* postconviction petition to the entry of the second-stage dismissal order was a factor in the court's

decision that the defendant did not receive reasonable assistance from counsel. *Kelly*, 2012 IL App (1st) 101521, ¶ 40. The defendant was initially represented by appointed counsel for more than four years and then represented by retained counsel. Retained counsel filed an amended postconviction petition that adopted the defendant's *pro se* pleadings. However, retained counsel did not shape the defendant's claims into the appropriate legal form. *Id.* ¶ 26. (Unlike here, the defendant in *Kelly* specifically described how counsel failed to properly amend one of his claims: counsel failed to cite the controlling United States Supreme Court precedent and failed to obtain an affidavit from a witness who was apparently willing to provide one. *Id.* ¶ 31.) In addition, at the hearing on the State's second-stage motion to dismiss, retained counsel asked the court to clarify at what stage the proceedings were. The *Kelly* court noted that retained counsel's inquiry indicated that "counsel either lacked basic knowledge of the Act or fundamentally misunderstood it." *Id.* ¶ 40. The court reversed the dismissal of the petition and remanded for further second-stage proceedings and the appointment of new counsel. *Id.* ¶ 41.

¶ 27 The *Kelly* court based its holding—that counsel had not provided reasonable assistance—on a combination of the 12-year delay, counsel's failure to fulfill the duty to shape defendant's *pro se* allegations into proper form, and counsel's misunderstanding of the Act. However, *Kelly* is not authority for finding Rule 651(c) noncompliance based on delay alone, and we decline to read the rule in that manner. We must add that we by no means condone the delay here, and we encourage trial courts and counsel to ensure that postconviction proceedings progress promptly.

¶ 28                                    III. CONCLUSION

¶ 29 For the reasons stated, we affirm the judgment of the circuit court of Winnebago County.

¶ 30 Affirmed.

*People v. Blake*, **2022 IL App (2d) 210154**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Winnebago County, No. 97-CF-1395; the Hon. Randy Wilt, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Thomas A. Lilien, and Jessica Wynne Arizo, of State Appellate Defender's Office, of Elgin, for appellant. |
| **Attorneys for Appellee:** | J. Hanley, State's Attorney, of Rockford (Patrick Delfino, Edward R. Psenicka, and David S. Friedland, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |