2024 IL App (1st) 230167-U

No. 1-23-0167

Order filed August 2, 2024

FIFTH DIVISION

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Respondent-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 06 CR 18238 |
| | ) | |
| ALONZO PERRY, | ) | Honorable |
| | ) | Angela Munari Petrone, |
| Petitioner-Appellant. | ) | Judge, presiding. |

PRESIDING JUSTICE MITCHELL delivered the judgment of the court.
Justice Lyle concurred in the judgment.
Justice Mikva dissented.

**ORDER**

¶ 1    *Held*:  Petitioner Alonzo Perry's post-conviction counsel did not perform unreasonably when she failed to amend his petition to include a *Miller*-based sentencing claim challenging his 54-year sentence.

¶ 2    Petitioner Alonzo Perry appeals the denial of his petition for post-conviction relief. The issue on appeal is whether post-conviction counsel provided unreasonable assistance when she failed to amend Perry's petition for post-conviction relief to include a *Miller*-based challenge to Perry's sentence despite knowing that Perry, who was 21 years old when he was convicted, wanted to pursue such an argument. *Miller v. Alabama*, 567 U.S. 460 (2012). We conclude that Perry's

sentencing challenge would have been frivolous; therefore, post-conviction counsel had no obligation to amend the petition. We affirm.

¶ 3                                    BACKGROUND

¶ 4      A jury convicted petitioner Alonzo Perry of first-degree murder and aggravated battery with a firearm. At the time of the murder, Perry was 21 years old. The court sentenced him to 54 years in prison. Perry filed a *pro se* petition for post-conviction relief on March 19, 2014. In the petition, Perry alleged that his trial and appellate counsel had been ineffective. The petition advanced to second-stage proceedings on August 12, 2014, because the circuit court failed to rule on it within 90 days.

¶ 5      Over the next seven years, the court assigned five attorneys to handle Perry's petition. Perry's first attorney retired shortly after being appointed. His second attorney represented Perry for over two years and also subsequently retired before taking any further action on his petition. Perry's third attorney repeatedly informed the court for nearly four years that she intended to file a supplemental petition before finally certifying that she had fulfilled all of her duties under the Illinois Supreme Court Rules without ever submitting a supplemental petition. Ill. S. Ct. R. 651(c) (eff. July 1, 2017). She then also retired. Perry's fourth attorney appeared for him once and asked for additional time to review the record and speak with Perry. Fewer than three months later, Perry's fifth and final attorney appeared and informed the court that she could not stand on Perry's third attorney's certification.

¶ 6      Amidst this turmoil, Perry submitted a *pro se* filing styled as a motion for leave to file a successive post-conviction petition on November 3, 2021. In the motion, Perry argued that his sentence was unconstitutional under both the United States and Illinois Constitutions because he

was 21 years old at the time of the murder. At her first appearance, Perry's final attorney informed the court that she did not believe that Perry had standing to file the successive petition and that "it'd be more effective for [her] to just amend his petition." She also indicated that it was possible that Perry had a viable age-based claim premised on *People v. House*, 2021 IL 125124. Three months later, post-conviction counsel submitted her own certification of compliance with Rule 651(c). She did not amend or supplement Perry's petition. The circuit court dismissed the petition, and Perry timely appealed. Ill. S. Ct. R. 606 (eff. Mar. 12, 2021).

¶ 7                                     ANALYSIS

¶ 8      The Post-Conviction Hearing Act allows a prisoner to collaterally challenge his conviction on state or federal constitutional grounds. 725 ILCS 5/122-1 (West 2022); see also *People v. Hatter*, 2021 IL 125981, ¶ 22. This type of challenge involves a three-stage process. In the first stage, the trial court reviews the prisoner's petition within 90 days after filing and docketing and dismisses it if it is "frivolous or is patently without merit." 725 ILCS 5/122-2.1(a)(2) (West 2022); see also *People v. Allen*, 2015 IL 113135, ¶ 21. At the second stage, the defendant is appointed counsel and the State has the opportunity to "file a motion to dismiss or an answer to the petition." *People v. Cotto*, 2016 IL 119006, ¶ 27. The Court must then "determine whether the petition and any accompanying documentation make a substantial showing of a constitutional violation." *Id.* ¶ 28. During the final stage of the process, "the court may receive 'affidavits, depositions, oral testimony, or other evidence,' to weigh the merits of the petition and determine whether the defendant is entitled to relief." *Allen*, 2015 IL 113135, ¶ 22 (quoting 725 ILCS 5/122-6 (West 2008)). Because this case was dismissed at the second stage, we review the dismissal *de novo*. *People v. Sanders*, 2016 IL 118123, ¶ 31.

¶ 9 On appeal from his second stage dismissal, Perry argues that his appointed post-conviction counsel provided him with an unreasonable level of assistance. There is no state or federal constitutional right to post-conviction counsel. *Cotto*, 2016 IL 119006, ¶ 29. The statutory right under the Act is limited: a petitioner is entitled only to reasonable rather than effective assistance. *People v. Hardin*, 217 Ill. 2d 289, 299 (2005). This standard is "significantly lower than the one mandated at trial by our state and federal constitutions." *People v. Custer*, 2019 IL 123339, ¶ 30.

¶ 10 The Illinois Supreme Court Rules provide three requirements to ensure the reasonable assistance of post-conviction counsel. Ill. S. Ct. R. 651(c) (eff. July 1, 2017). First, counsel must consult "with petitioner by phone, mail, electronic means or in person to ascertain his or her contentions of deprivation of constitutional rights." *Id.* Second, counsel must examine "the record of the proceedings at the trial." *Id.* Third, counsel must make "any amendments to the petitions filed *pro se* that are necessary for an adequate presentation of petitioner's contentions." *Id.* If counsel fails to comply with the rule, the error cannot be harmless. *People v. Addison*, 2023 IL 127119, ¶ 33 ("Because counsel did not comply with Rule 651(c), our case law dictates that the cause should be remanded without a consideration of whether the petition's claims have merit."); *People v. Suarez*, 224 Ill. 2d 37, 47 (2007) ("This court has consistently held that remand is required where postconviction counsel failed to fulfill the duties of consultation, examining the record, and amendment of the *pro se* petition, regardless of whether the claims raised in the petition had merit."). Counsel can show compliance with the rule in one of two ways: she can file a certificate stating that she complied, "or the record as a whole may demonstrate counsel's compliance." *Pabello*, 2019 IL App (2d) 170867, ¶ 24. The burden is then on the defendant to

demonstrate "his attorney's failure to substantially comply with the duties mandated by Rule 651(c)." *People v. Profit*, 2012 IL App (1st) 101307, ¶ 19.

¶ 11    Perry's post-conviction counsel filed a Rule 651(c) certificate; therefore, we must presume that post-conviction counsel provided reasonable assistance. However, Perry argues that the facts in the record overcome this presumption. Specifically, he argues that post-conviction counsel's failure to file an amended or supplemental petition is inconsistent with Rule 651(c)'s requirement that counsel must make "any amendments to the petitions filed *pro se* that are necessary for an adequate presentation of petitioner's contentions." The State responds that Perry's sentencing argument is "unquestionably meritless," thus any amendments are not "necessary" within the meaning of Rule 651(c).

¶ 12                                    A. Proportionate Penalties

¶ 13    Despite *Addison*'s prohibition on subjecting a violation of Rule 651(c) to a harmless error or "prejudice" analysis, *Addison* itself plainly considered the merits of the petitioner's claim in assessing whether the petitioner's postconviction counsel failed to provide reasonable assistance. 2023 IL 127119, ¶ 26 ("We fail to see how it can be reasonable assistance of counsel for an attorney to identify claims worth pursuing but then fail to shape them into proper form"). In its text and structure, *Addison* sets up a two-step procedure. A reviewing court must first determine if post-conviction counsel rendered unreasonable assistance by failing to make a necessary amendment to the post-conviction petition. If so, then the reviewing court must remand "without considering the merits of the petition." *Id.* ¶ 1. A reviewing court must determine if an amendment was "necessary" in order to establish that post-conviction counsel failed to provide reasonable assistance (the very thing that requires a remand to correct).

¶ 14    Significantly, *Addison* discusses *People v. Greer* and the commonsense notion that post-conviction counsel only renders unreasonable assistance when she fails to advance a "meritorious" claim. *Id.* ¶ 26. *Greer* held that "[i]f amendments to a *pro se* postconviction petition would only further a frivolous or patently nonmeritorious claim, they are not 'necessary' within the meaning of the rule." 212 Ill. 2d 192, 205 (2004). An argument is not frivolous if "it is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law ***." Ill. S. Ct. R. 137(a) (eff. Jan. 1, 2018); see also *People v. Urzua*, 2023 IL 127789, ¶ 37 (noting that, in the context of a post-conviction petition, "[t]his court observed that an attorney cannot advance frivolous or spurious claims on behalf of a client, because doing so violates his or her duties under Illinois Supreme Court Rule 137 (eff. Feb. 1, 1994)"). In other words, post-conviction counsel is not automatically excused from amending a post-conviction petition to include a losing claim unless the claim lacks any arguable basis in fact or law.

¶ 15    This rule necessarily requires us to consider whether it is at all possible, not simply likely or probable, that a petitioner's argument could succeed. In cases involving counsel's consultation with petitioners or examination of the record, it is unnecessary to consider the underlying petition because post-conviction counsel's behavior is all that is at issue. However, post-conviction counsel can also act unreasonably by failing to make "necessary" amendments to a petition. Whether post-conviction counsel's failure to amend a petition is unreasonable thus depends on whether the amendment was "necessary." Indeed, in *Addison*, the Illinois Supreme Court first determined that counsel was unreasonable for failing to "make the necessary amendments to put the claims in their

proper form" before determining that remanding the case to the circuit court was required. 2023 IL 127119, ¶¶ 25-33.

¶ 16   Turning back to Perry's claim, in *Miller*, the United States Supreme Court held that "mandatory life-without-parole sentences for juveniles violate the Eighth Amendment." 567 U.S. at 470. Instead of mandatory sentences, it was incumbent upon courts to consider "an offender's youth and attendant characteristics *** before imposing a particular penalty." *Id.* at 483. The *Miller* court drew a bright line in defining juveniles as individuals under the age of 18. *Id.* at 465. In interpreting this holding, however, the Illinois Supreme Court has been more permissive. Rather than limiting as-applied constitutional challenges to people under 18, the supreme court has tacitly endorsed challenges by young adults over the age of 18. See *People v. Thompson*, 2015 IL 118151, ¶ 44 (finding that a 19-year-old defendant was "not necessarily foreclosed from renewing his as-applied challenge in the circuit court."); *People v. Harris*, 2018 IL 121932, ¶ 48 (finding the same for a defendant slightly over 18 years old). However, more recently, the supreme court clarified that "those cases addressed the possibility of a defendant raising a *Miller*-based challenge with respect to *mandatory* life sentences in *initial* postconviction petitions." (Emphases in original.) *Hilliard*, 2023 IL 128186, ¶ 27 (quoting *People v. Clark*, 2023 IL 127273, ¶ 88). "Thus, as defendant did not receive a mandatory sentence, [*Thompson* and *Harris*] do not provide support for his proportionate penalties claim ***." *Id.*

¶ 17   Any argument for extending the principles of *Miller* to adults 21 years and older is equally frivolous. In *Miller*, importantly, "the line drawn by the Supreme Court at age 18 was not based primarily on scientific research." *Harris*, 2018 IL 121932, ¶ 60. Instead, the determination came from a combination of social science, science, legal precedent, and common sense. *Miller*, 567

U.S. at 471-72. Thus, the fact that new scientific evidence purports to show continued brain development in adults 21 years of age and older is an insufficient basis for extending *Miller*-based proportionate penalties claims.[1] Drawing any bright line "is subject, of course to the objections always raised against categorical rules." *Roper v. Simmons*, 543 U.S. 551, 574 (2005). Individuals mature at different rates, and a defendant who committed a crime when he was 20 years and 364 days old is not meaningfully different from one who was 21 years old. However, in spite of this arbitrariness, "society draws the line for many purposes between childhood and adulthood." *Id.* Illinois has long recognized this line in criminal sentencing. Therefore, any argument for extending *Miller* must go beyond simply citing scientific evidence and demonstrate that "our community's evolving standard of decency" demands redefining when adulthood begins because the current line "shocks the moral sense of the community." *People v. Miller*, 202 Ill. 2d 328, 340-41 (2002).

¶ 18    While our supreme court has never drawn a bright line that solidly defines the age at which a defendant can no longer attempt to bring an as-applied *Miller*-based claim, this court has repeatedly concluded that "the line of adulthood has been drawn at age 21." *People v. Green*, 2022 IL App (1st) 200749, ¶ 42; see also *People v. Buford*, 2023 IL App (1st) 201176, ¶ 49; *People v. Humphrey*, 2020 IL App (1st) 172837, ¶¶ 33-34, *abrogated by People v. English*, 2023 IL 128077; *People v. Hemphill*, 2022 IL App (1st) 201112, ¶ 40. Even before *Miller*, Illinois had a well-trod history of concluding that adulthood begins when a person turns 21 years old. Since the late 19th century, Illinois has recognized that there are differences between "persons of mature age" and "minor[s] between the ages of 16 and 21 years." *People ex rel. Bradley v. Superintendent, etc., of*

---

[1] This holding should be in no way taken to mean that a defendant 21 years old or older cannot bring *any* proportionate penalties argument, only that a *Miller*-based argument would be frivolous.

*Illinois State Reformatory*, 148 Ill. 413, 422-23 (1894). In 1891, Illinois sentencing law provided that "[a]ny court in this State exercising criminal jurisdiction may sentence *** any male criminal between the ages of sixteen and twenty-one years" to a reformatory rather than a prison. Ill. Rev. Stat. 1891, ch. 118, § 12. Since 1933, Illinois sentencing law has drawn lines no older than 21 years. 1933 Ill. Laws 486. Since 1966, the Juvenile Court Act, despite various amendments, has defined an "adult" as a person 21 years of age or older and a "minor" as someone younger than 21 years old. Ill. Rev. Stat. 1967, ch. 37, § 701-5; see also 705 ILCS 405/1-3(2), (10) (West 2010) (the Juvenile Court Act when Perry was convicted); 705 ILCS 405/1-3(2), (10) (West 2022) (the Juvenile Court Act today). Most recently, in 2019 and 2023, the General Assembly passed parole laws that provided special parole review rules for individuals under 21 years of age. 730 ILCS 5/5-4.5-115 (West Supp. 2023).[2]

¶ 19    Accordingly, this court's caselaw and this state's history demonstrate an established distinction between defendants who are 21 years old and older and defendants under 21 years old. The General Assembly's recent actions only reaffirm this cutoff, and the Illinois Supreme Court, while not outright rejecting proportionate penalties claims by young adults, has intimated that such claims stand on shaky ground. See *Hilliard*, 2023 IL 128186, ¶ 28 ("*Miller* applies to neither discretionary sentences nor adults."). Given this backdrop, any argument for recognizing the special status of a 21-year-old individual during sentencing finds no support in fact, law, or history. Further, at this time, there is no reason to depart from this settled principle. The actions of our

---

[2] The only time in Illinois's history when the legislature gave special consideration to adults over 21 years old in sentencing was an 18-year period from 1915 to 1933. 1915 Ill. Laws 560. The law permitted judges to sentence any male person between 16 and 26 years old to the Illinois State Reformatory rather than the penitentiary. *Id.*

legislature and supreme court indicate that drawing the line of adulthood in sentencing decisions at 21 years is not "abhorrent to the community's moral sense." *Id.* ¶ 39. Instead, it is consistent with Illinois's long history and tradition of drawing such a line. Thus, because Perry was 21 years old at the time of the offense, his age-based sentencing argument was frivolous, and his post-conviction counsel was not unreasonable for failing to amend the petition to include it.

¶ 20    The dissent's approach would extend the scope of *Addison*'s reasoning beyond its logical limits. Because there the court determined that it is unreasonable assistance "for an attorney to identify claims worth pursuing but then fail to shape them into proper form," the dissent concludes that post-conviction counsel here was reasonable because she did not "identify claims worth pursuing." *Addison*, 2023 IL 127119, ¶ 25. *Addison* does not and could not stand for this proposition. *Addison* speaks only to what happens when post-conviction counsel *does* identify claims worth pursuing; it has nothing to say about what happens when post-conviction counsel *does not* identify claims worth pursuing.

¶ 21    As the dissent acknowledges, failure to comply with Rule 651(c) is not the only way to provide post-conviction petitioners unreasonable assistance. See *Cotto*, 2016 IL 119006, ¶ 41 ("Rule 651(c) is merely a vehicle for ensuring a reasonable level of assistance and should not be viewed as the only guarantee of reasonable assistance in postconviction proceedings." (internal citations and quotations omitted.)). For instance, if a petitioner had raised a non-frivolous argument in what he had labeled his "successive petition," his attorney would not have provided reasonable assistance simply because she failed to identify that argument as worth pursuing.

¶ 22    As a general rule, "[p]ost-conviction counsel is only required to investigate and properly present the *petitioner's* claims." (Emphasis in original.) *People v. Davis*, 156 Ill. 2d 149, 164

(1993). Post-conviction counsel is not required to "scour the record to uncover claims that were not raised by the defendant." *People v. Milam*, 2012 IL App (1st) 100832, ¶ 33. However, these principles do not excuse post-conviction counsel from amending the initial petition to properly raise a petitioner's existing, non-frivolous argument. The fact that a petitioner raised an argument improperly would not prevent this court from determining that post-conviction counsel provided unreasonable assistance. It is simply not reasonable for post-conviction counsel to turn a blind eye to known constitutional claims that petitioners raise. In particular, there would be no justification for this holding where post-conviction counsel is aware of the separate filing. Correcting these sorts of errors is exactly what Rule 651(c) requires post-conviction counsel to do.

¶ 23                              B. Unreasonable Delay

¶ 24    The dissent proposes to reverse and remand for new second stage proceedings based on the almost nine-year time lapse from when Perry submitted his *pro se* post-conviction petition and disposition in the case. It is worth noting at the outset that Perry does not argue that this delay is a basis for finding that his attorneys performed unreasonably. He instead argues that his attorneys' actions demonstrate that their performance over that time was unreasonable. If Perry wanted to make the argument the dissent makes for him, he must have done more than "merely list[ it] or include[ it] in a vague allegation of error ***." *Vancura v. Katris*, 238 Ill.2d 328, 340 (2010). His failure to raise the argument "and the reasons therefor, with citation of the authorities and the pages of the record relied on" means that the argument is forfeited. Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020); see also *Vancura*, 238 Ill.2d at 340.

¶ 25    Regardless, a significant delay between the appointment of post-conviction counsel and disposition of the case, standing alone, is an insufficient basis for finding that post-conviction

counsel acted unreasonably. See *People v. Blake*, 2022 IL App (2d) 210154, ¶ 27; *People v. Caldwell*, 2023 IL App (1st) 201375-U, ¶ 87. There are any number of circumstances, which may be entirely unrelated to the performance of post-conviction counsel, that could cause a case to be delayed. We cannot say that anything in this case rose to the level of unreasonable assistance.

¶ 26    Nothing in the facts of this case suggests that the delays were caused by unreasonable performance by the attorneys. Many of the delays appear to have been unavoidable. Perry's first three attorneys all retired, leaving their replacements to familiarize themselves with extensive records. None of these attorneys could have been expected to forego their retirements until after they had finished Perry's case, and each of them would have performed unreasonably if they had not reviewed the record. Ill. S. Ct. R. 651(c). Further, the clerk's office took a year to provide Perry's second attorney with the trial court record, and Perry's second attorney also had eye surgery and took some time to recover. Perry's fourth attorney only appeared for Perry once before being replaced by his final attorney. Additionally, most of the final year of this case involved the trial court deciding the State's motion to dismiss.

¶ 27    The remaining delays in this case involved repeated assurances to the court by the attorneys that they were working diligently on Perry's case. Perry has offered no evidence to refute these assurances. We simply do not know what Perry's attorneys were doing during these delays, and we cannot say that the failure to file documents is necessarily unreasonable without more. See *People v. Turner*, 187 Ill. 2d 406, 412 (1999) (recognizing that Rule 651(c) does not contain a "requirement that post-conviction counsel must amend a petitioner's *pro se* petition."). We will not assume—as the dissent does—that Perry's attorneys must have been acting unreasonably. Holding otherwise would improperly shift the burden of proof from the defendant to the State.

*Profit*, 2012 IL App (1st) 101307, ¶ 19 (holding that a Rule 651(c) certificate creates a "presumption that post-conviction counsel provided reasonable assistance" and it is "defendant's burden to overcome this presumption \*\*\*.").

¶ 28 The dissent relies on our decision in *People v. Kelly*, 2012 IL App (1st) 101521, as the basis for holding that a lengthy time delay in a case can support a finding of unreasonable assistance. This case is a far cry from *Kelly*. There, we determined that Kelly's two attorneys, over the course of a twelve-year period, provided unreasonable assistance. 2012 IL App (1st) 101521, ¶ 41. We recognized three facts that demonstrated the attorneys' unreasonable assistance. (1) Nearly twelve years had passed since the filing of Kelly's *pro se* petition. *Id.* ¶ 40. (2) Kelly's private counsel had failed "to shape petitioner's \*\*\* claims into appropriate legal form for presentation to the court \*\*\*." *Id.* (3) "Private counsel's comments at the May 2010 hearing \*\*\* indicate counsel either lacked basic knowledge of the Act or fundamentally misunderstood it." *Id.* It was the combination of these facts that the court found dispositive. Here, there are simply no other facts to color the almost nine-year delay as unreasonable.

¶ 29 Regardless, Perry cannot show prejudice here. While a violation of Rule 651(c) results in mandatory reversal under *Addison*, "a *Strickland*-like analysis is the appropriate standard to use for reasonable assistance claims" that do not implicate the rule. *People v. Zareski*, 2017 IL App (1st) 150836, ¶ 59; see also *People v. Ayala*, 2022 IL App (1st) 192484, ¶ 162; *cf. Cotto*, 2016 IL 119006, ¶ 50 (concluding that Cotto's post-conviction counsel did not perform unreasonably where "defendant fails to explain what additional information should have been included by counsel in regard to the timeliness issue" and "the record demonstrates that defendant's petition was not dismissed as untimely."). Under this standard, Perry would not only need to show that his

attorneys had performed unreasonably but also that "there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *Ayala*, IL App (1st) 192484, ¶ 162. Perry has made no argument as to how he was prejudiced by the delay in this case, and the dissent has offered none. Accordingly, we affirm the dismissal of his post-conviction petition.

¶ 30                                        CONCLUSION

¶ 31    The judgment of the circuit court of Cook County is affirmed.

¶ 32    Affirmed.

¶ 33    JUSTICE MIKVA, dissenting:

¶ 34    The majority rejects Mr. Perry's claim on appeal that he did not receive reasonable assistance of postconviction counsel on the basis that the sentencing claim, which counsel suggested to the court she might amend his petition to include, was "frivolous" and thus "his post-conviction counsel was not unreasonable for failing to amend the petition to include it." *Supra* ¶ 19. I appreciate the majority's effort to make sense of how we are to judge the performance of postconviction counsel after our supreme court's decision in *People v. Addison*, 2023 IL 127119. However, I cannot agree with either the approach or with the result in this case.

¶ 35    In *Addison*, the court began its analysis with Illinois Supreme Court Rule 651(c). *Id.* ¶ 20. That rule spells out three specific duties of postconviction counsel: (1) consult with the petitioner, (2) examine the record and, (3)—the one that is at issue here—"ma[k]e any amendments to the petitions filed *pro se* that are necessary for an adequate presentation of petitioner's contentions." Ill. S. Ct. R. 651(c) (eff. July 1, 2017). The court then stated that "[c]ompliance with the rule is

mandatory." *Addison*, 2023 IL 127119, ¶ 21. When counsel files a Rule 651(c) certificate, a rebuttable presumption of reasonable assistance arises and "[t]he defendant bears the burden of overcoming th[is] presumption by showing that postconviction counsel did not substantially comply with the strictures of the rule." *Id.*

¶ 36    Most significantly, for purposes of this case: The supreme court in *Addison* made clear that when the petitioner *does* overcome the presumption that postconviction counsel performed the duties set out in Rule 651(c), "it is inappropriate to consider the merits of the claim in the petition." *Id.* ¶ 42 (citing *People v. Suarez*, 224 Ill. 2d 37, 48 (2007)). Under *Addison*, it does not matter whether Mr. Perry's age-based sentencing argument was "frivolous." To the contrary, the failure to provide reasonable assistance cannot be a harmless error. *Id.* ¶ 35. Thus, I reject the majority's conclusion (*supra* ¶ 19) that the dismissal of Mr. Perry's petition should be affirmed on the basis that the claim lacks merit.

¶ 37    However, I do agree with the majority that, under *Addison*, Mr. Perry has not shown he received unreasonable assistance by pointing to his sentencing claim. Nothing in *Addison* suggests that counsel must "adequate[ly] present[ ]" every claim that petitioner mentions or lays out in their *pro se* petition. To the contrary, what was compelling to the *Addison* court was that postconviction counsel had "*identified several claims that she believed were worth pursuing* but did not make the necessary amendments to put the claims in their proper form." (Emphasis added.) *Addison*, 2023 IL 127119, ¶ 25. The court reiterated the point a paragraph later: "We fail to see how it can be reasonable assistance of counsel for an attorney to identify claims worth pursuing but then fail to shape them into proper form." *Id.* ¶ 26.

¶ 38    The record in this case simply does not demonstrate that this sentencing claim was one that postconviction counsel had "identified" as "worth pursuing." The only reference to this claim by counsel was at a December 2021 court date in which counsel vaguely referred to a claim that Mr. Perry was making in a "successive" and said, "[S]o honestly it'd be more effective for me to just amend his petition." This is in stark contrast to what occurred in *Addison*, where postconviction counsel had clearly "determined that some of [the] defendant's claims were worth pursuing and filed an amended petition raising five issues." *Id.* ¶ 24.

¶ 39    It is also quite different than what occurred in *People v. Jean*, 2024 IL App (1st) 220807, ¶ 33, where postconviction counsel "orally asserted" a proportionate penalties violation but did not amend the defendant's *pro se* petition to include it. In that case, we followed the lead of our supreme court in *Addison* and remanded so that the defendant could be given "the benefit of reasonable assistance of counsel" and did so with no consideration of the merits of the postconviction claims at issue. *Id.* ¶ 50.

¶ 40    To the extent that Mr. Perry seeks to come within the showing of unreasonable assistance that the courts recognized in *Addison* and *Jean*—where an attorney identifies a claim but fails to put it in the proper form—I agree with the majority that he has not carried his burden in this case. In my view, however, this is because the claim was not "identified" by counsel as worth pursuing, not because we, as the reviewing court, find that it lacked merit.

¶ 41    In addition, the route identified in *Addison* and *Jean* is not the only one for demonstrating unreasonable assistance. This court has found that a postconviction petitioner had received unreasonable assistance where, for example, counsel advised the court that the petitioner's claim lacked merit, rather than filing a motion to withdraw. *People v. Salgado*, 2021 IL App (2d)

190970-U, ¶ 31. We have also found unreasonable assistance where counsel "misapprehended the standard that applies to second stage proceedings when he erroneously asserted that the defendant's postconviction petition could be advanced by a showing that the petition contained the 'gist of a constitutional claim.' " *People v. Belmont*, 2024 IL App (5th) 220625-U, ¶ 22. And we have found that "counsel's decision to abandon [the] defendant's claim on legally incorrect grounds rebut[ted] counsel's Rule 651(c) certification and show[ed] counsel provided unreasonable assistance." *People v. Williams*, 2022 IL App (4th) 210087-U, ¶ 39. We cite to these unpublished decisions under Illinois Supreme Court Rule 23(b) (eff. Feb. 1, 2023) simply to show that unreasonable assistance has been found on a basis other than that identified by our supreme court in *Addison*.

¶ 42     Of specific relevance to this case, we have found that an unreasonable delay in presenting a petitioner's claims to the court once counsel has been appointed may also constitute unreasonable assistance. See *People v. Kelly*, 2012 IL App (1st) 101521, ¶ 40 (finding a "nearly 12-year period that elapsed from [the] petitioner's filing of his *pro se* petition *** to the circuit court's dismissal of the amended petition *** illustrat[ed] the unreasonable representation" provided by postconviction counsel).

¶ 43     On March 19, 2014, Mr. Perry timely filed a *pro se* postconviction petition. Our decision affirming his convictions on direct appeal included a vigorous dissent citing at least "three fundamental injustices" during his trial. *People v. Perry*, 2013 IL App (1st) 100474-U, ¶ 87 (Pucinski, J., dissenting). Of particular concern to the dissenting justice was that another man— who, like Mr. Perry, knew the victim from Job Corps—was identified by several witnesses as the shooter, and that Jane Parker, the disciplinarian at Job Corps who knew both Mr. Perry and the

other man, identified the other man as the shooter on the video of the shooting, "without doubt." *Id.* ¶ 126. One of Mr. Perry's claims in his petition was that his trial lawyer was ineffective because counsel never called Jane Parker as a witness. This claim failed, in part, because no affidavit from Jane Parker was ever attached to the petition and no explanation was ever provided for the lack of affidavit.

¶ 44     On August 12, 2014, the circuit court advanced Mr. Perry's petition to the second stage and appointed him counsel because the petition had not been ruled on within 90 days. See *People v. Frey*, 2024 IL 128644, ¶ 22 (noting that a petition advances to the second stage if it states an arguable claim of a constitutional deprivation or if the court fails to rule on it within 90 days, regardless of the petition's merit).

¶ 45     Mr. Perry was then assigned a series of five different public defenders. The first two do not appear to have ever spoken to Mr. Perry about his petition. The third, who was assigned to the case from July 2017 until October 2021, spent four years and numerous court dates advising the court that she intended to file a supplemental petition on Mr. Perry's behalf but then filed a Rule 651(c) certificate without ever making any amendments or filing a supplemental petition. A fourth lawyer was assigned for a couple of months in 2021, but does not appear to have taken any action on Mr. Perry's behalf. Finally, the lawyer who represented Mr. Perry when his petition was dismissed was assigned in December 2021. On February 28, 2022, she filed a Rule 651(c) certificate, did not make any amendments, and did not file a supplemental petition to include the sentencing claim. The State then filed its motion to dismiss, which the court granted on January 9, 2023—almost nine years after Mr. Perry initially filed his petition.

¶ 46     During this almost-nine-year delay, at least five different lawyers told the court that they were working on Mr. Perry's petition, but none of them took *any* action to amend his petition or help him present his claims to the court. In contrast to *Kelly* where the delay was attributable to a combination of appointed and retained counsel, all this delay was occasioned by different lawyers within the Cook County public defender's office. Moreover, where in *Kelly* the privately retained lawyer at least filed an amended petition (*Kelly*, 2021 IL App (1st) 101521, ¶ 30), here the lawyers never made any amendments although they kept telling the court they were going to do so. This history does not suggest that anyone took Mr. Perry or his claims with any kind of reasonable seriousness. Mr. Perry did not receive reasonable assistance here. I would reverse the decision of the circuit court and remand for new second-stage proceedings.

¶ 47     The majority points out, correctly, that Mr. Perry did not develop the argument that he received unreasonable assistance of counsel based on the almost-nine-year delay and therefore has forfeited the issue. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) (the argument section of an appellate brief "shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on," and "[p]oints not argued are forfeited"). However, "forfeiture is a limitation on the parties and not the reviewing court, and we may overlook forfeiture where necessary to obtain a just result or maintain a sound body of precedent." *People v. Holmes*, 2016 IL App (1st) 132357, ¶ 65. In the interest of obtaining a just result, I would overlook the forfeiture here.

¶ 48     I also acknowledge that, unlike the *Kelly* court, other panels of this court have declined to find that a long time delay constituted unreasonable assistance. See, *e.g.*, *People v. Caldwell*, 2023 IL App (1st) 201375-U, ¶ 85 (finding a passage of three years plus "postconviction counsel's

persistence in representing [the] defendant" did not constitute unreasonable assistance); *People v. Blake*, 2022 IL App (2d) 210154, ¶ 27 (concluding that *Kelly* was "not authority for finding Rule 651(c) noncompliance based on delay alone" and declining to find so). But multiple panels of this court have expressed concern with the time delays postconviction petitioners experience after counsel has been appointed. . See, *e.g.*, *Blake*, 2022 IL App (2d) 210154, ¶ 27 (stating that "we by no means condone the delay here, and we encourage trial courts and counsel to ensure that postconviction proceedings progress promptly"); *People v. Bennett*, 394 Ill. App. 3d 350, 355 (2009) (expressing "dissatisfaction with the course this matter has taken through the trial court" and noting that significant time lapses "reflect poorly on the court and bar and cannot go unremarked").

¶ 49    Significant time delays in prosecuting postconviction petitions appear to be common and court expressions of dissatisfaction and admonitions appear to have done little to change this. Regardless of what may be good reasons for passing Mr. Perry's petition through five attorneys, I simply do not agree that nine years between appointment and presentation and defense of these claims was reasonable assistance. Accordingly, I dissent.